[English v. Progress Electric Light & Motor Co.]

# English *v.* Progress Electric Light & Motor Co.

*Bill in Equity for Injunction of City Electric Lights Works as Nuisance.*

1. *Injunction for abatement of nuisance.*—An injunction for the abatement of a private nuisance is not a matter of absolute right, but rests in judicial discretion, to be exercised according to the settled principles which regulate the interference of the court in such cases, having regard, on the one hand, to the right of every person to use his own property as his taste, desires and interest may dictate, and, on the other, to the right of his neighbors to the comfortable and unmolested use and enjoyment of their property; and it should only be granted "when imperatively necessary to prevent multiplicity of suits, irreparable injury, or continuous or constantly recurring injuries, for which legal remedies are inadequate to afford full redress."

2. *Nuisance defined.*—While it is difficult, if not impracticable, to formulate a rule accurately defining the acts or facts which will constitute a nuisance under any and all circumstances, it may be stated as a general proposition, that any establishment erected on his premises by the owner, though for the purpose of trade or business lawful in itself, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes substantial injury to the property of another, or produces material annoyance and inconvenience to the occupants of adjacent dwellings, rendering them physically uncomfortable, is a nuisance; and this principle has been applied to smoke, offensive odors, noises and vibrations, caused by the operation of gas-works, electric-light works, various factories and other industries located in a city.

3. *Injunction against industrial enterprise of public utility in city.* When an injunction is sought against an industrial enterprise of public utility in a city, the abatement of which as a nuisance would entail heavy loss on the owners and injury to the citizens generally by increased cost of light, or otherwise, the court will exercise its power cautiously and sparingly, and will require the complainants to show a case of imperative necessity by clear and convincing evidence; and when the evidence shows, as in this case, that the noises, smoke, soot and vibrations caused by the operation of the defendant's machinery and works, which are complained of, have been greatly reduced by the introduction of improved machinery and appliances, and may be further lessened at small expense to the complainants, until brought within the ordinary discomforts and inconveniences incident to a city life, the court will refuse to interfere by injunction, and will leave the parties to seek compensation by an action at law for damages caused by increased risk of fire, danger of explosion, depreciated value of property, and increased rate of insurance.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. THOS. W. COLEMAN.

English v. Progress Electric Light & Motor Co.]

The bill in this case was filed on the 22d February, 1888, by Mrs. Martha E. English and others, owners of certain real estate in the city of Mobile, against the Progress Electric Light & Motor Company, a private corporation engaged in the business of manufacturing and furnishing electric lights for the streets, public buildings, private residences, &c., in the city of Mobile; and sought an injunction to abate the defendant's works as a nuisance, causing the complainants' great inconvenience, discomfort and injury, as more fully stated in the opinion. On final hearing on pleadings and proof, the court below dismissed the bill; and its decree is here assigned as error.

GREG. L. & H. T. SMITH, for appellants.—(1.) A court of equity will enjoin a private nuisance, (1) whenever necessary to prevent a multiplicity of actions, or (2) where the grievance is constantly recurring, or (3) where irreparable injury will be done, or (4) where the thing complained of is a nuisance *per se.—Ross & Smith v. Martin & Flowers*, 75 Ala. 515; Wood on Nuisances, §§ 769–72; *St. James' Church v. Arrington*, 36 Ala. 546; *Ogletree v. McQuaggs*, 67 Ala. 584; *Nininger v. Norwood*, 72 Ala. 281; *Farris & McCurdy v. Dudley*, 78 Ala. 129; *Ross v. Butler*, 19 N. J. Eq. 294; *Robinson v. Baugh*, 31 Mich. 290; *White v. Forbes*, Walk. Ch. 112; *Sprague v. Rhodes*, 4 R. I. 301; *Cleveland v. Citizen's Gas Co.*, 20 N. J. Eq. 201; *Rochester v. Curtis*, Clarke's Ch. (N. Y.) 336; *Corning v. Troy Iron & Nail Co.*, 40 N. Y. 191; *Railroad Co. v. Archer*, 6 Paige Ch. 83; *Dittman v. Repp*, 50 Md. 516, or 33 Amer. Rep. 325; *Penn. v. Bridge Co.*, 13 How. U. S. 557.

(2.) Whatever is so offensive to the senses as to render life uncomfortable, is a nuisance; and it is none the less so because some persons have become accustomed by long use to endure them without discomfort. If the prosecution of a business, lawful in itself, renders the enjoyment of their property by other persons materially uncomfortable, by smoke, cinders, noise, vibrations, offensive odors, &c., though not injurious to health, it is a nuisance, and subject to abatement as such.—*Brander v. Harlan Lighting Co.*, 62 N. Y. Sup. 245; Cooley on Torts, 2d ed. 712; *McKeon v. See*, 25 How. Pr. 238; *Wesson v. Washburn Man. Co.*, 15 Allen, Mass. 95; *Ross v. Butler*, 19 N. J. Eq. 296; *Dennis v. Exhardt*, 3 Grant's Ch. 390; *Robbins v. Baugh*, 31 Mich. 291; *Dittman v. Repp*, 33 Amer. Rep. 325; *Meigs v. Lister*, 23 N. J. Eq. 199; 1 High on Injunctions, 496; 38 Amer. Dec. 567; 89 Amer. Dec. 616; *Fish v. Dodge*, 47 Amer. Dec. 254.

[English v. Progress Electric Light & Motor Co.]

(2.) The existence of the nuisance being fully established, the court will require it to be abated; and it may both enjoin and award damages.—*Farris & McCurdy v. Dudley,* 78 Ala. 129; 20 N. J. Eq. 387; High on Injunctions, 792; Wood on Nuisances, § 786. If the defendant can abate the nuisance without injury to his works, he may be allowed to do so; but the court will retain the bill until the nuisance is abated. How this shall be effected, is a question which concerns the defendant alone.

(4.) The right of a citizen to live free from nuisances does not depend on the character or construction of his house, nor on the neighborhood in which it is situated; nor can any neighborhood be outlawed from the protection of the court against nuisances, by the existence of two manufacturing establishments in its precincts. The rule applies only when the neighborhood is wholly given up to such establishments, so that the addition of one more will not greatly increase the discomforts.

(5). A man has no right to erect extensive works and make heavy expenditures of money for the exercise of a trade or business which is a nuisance to his neighbors, and then claim immunity from liability on the ground that his business is of public utility, that he has adopted the most improved methods and appliances to lessen the discomforts caused to them, and that the stoppage of his works will involve him in ruin.

(6.) While the public have an interest in obtaining electric lights, they have no interest in the particular location of the works in any part of the city.

(7.) The evidence does not show any *laches* or acquiescence on the part of the complainants, such as would bar their right to relief—31 Mich. 293; *Stein v. Burden,* 29 Ala. 127; *Lewis v. Stein,* 16 Ala. 219; *Mills v. Hall,* 9 Wend. 315; *People v. Cunningham,* 1 Den. 524; *Staple v. Spring,* 10 Mass. 79; *Miller v. Frazer,* 3 Watts, 456; *Hodges v. Hodges,* 5 Metc. 205; 3 Camp. 398; 3 N. H. 88; 3 Denio, 306; 9 Wend. 315; 4 Wait's A. & D. 782.

J. LITTLE SMITH, THOS. H. SMITH, and OVERALL & BESTOR, *contra.*—The bill invokes the extraordinary power of the court to control an individual in the use and enjoyment of his own property; a power necessarily vested in a court of equity, but exercised cautiously and sparingly, and only in cases of imperative necessity to prevent irreparable injury and a multiplicity of suits, in which legal remedies are inadequate. When the thing sought to be abated is not a nui-

sance *per se,* but is an industrial enterprise of public utility and convenience, the court will require a very strong case of necessity and damage to be shown; and if it appears that the discomforts or evils complained of can be abated by the introduction of improved machinery and appliances, or reduced within reasonable limits by a small expenditure of money or labor, will only require this to be done ; and in all such cases, the court will consider the public interests involved, and damage to the defendant by the suppression of his works, as compared with the slight discomfort and inconvenience suffered by the complainants from their continued operation. These several principles apply to the facts of this case, and they are abundantly supported by the adjudged cases.—*Rouse & Smith v. Martin & Flowers,* 75 Ala. 515; *Rosser v. Randolph,* 7 Porter, 245; *Railway Co. v. Witherow,* 82 Ala. 196; *Ray v. Lyons,* 10 Ala. 63; *Huckenstein's Appeal,* 70 Penn. St. 106; *Richard's Appeal,* 57 Penn. St. 113; *Kingsbury v. Flowers,* 65 Ala. 484; *Green v. Lake,* 54 Miss. 540, or 28 Amer. Rep. 378; *Perry v. Railroad Co.,* 55 Ala. 420; *Dorsey v. Allen,* 85 N. C. 358, or 39 Amer. Rep. 704; *Gilbert v. Showerman,* 23 Mich. 49. Discarding the allegations of danger from fire, explosions, soot, increased rates of insurance, and depreciation in value of property, for which adequate compensation may be obtained by an action at law, the evidence shows no injury, present or prospective, beyond the ordinary discomforts and inconveniences incident to a city life, which constitute no ground for equitable interference by injunction.—*Carpenter v. Cummings,* 2 Phil. Eng. Ch. 76; *Anon.,* 3 Atk. 750; *Hyatt v. Meyers,* 73 N. C. 232; 38 How. Pr. 184. It is insisted, also, that if complainants ever had any case authorizing equitable relief, they have lost it by their own *laches.—Thomas v. Woodman,* 33 Amer. Rep. 156, and cases cited in opinion.

CLOPTON, J.—Appellants invoke the interference of the Chancery Court to abate by injunction, as a nuisance, the electric plant maintained and operated by appellee in the city of Mobile. The remedy sought is preventive, and incidentally compensatory. An injunction for such purpose is not a matter of absolute right; but, if, as has been said, it rests in judicial discretion, the exercise of such discretion is not without limitations, and is to be guided by the settled principles on which the interference by the court in such cases depends. In considering whether or not an injunction should be granted, regard must be had, on the one hand, to the right of every person to use his own property as his

[English v. Progress Electric Light & Motor Co.]

taste, desires and interest may dictate; and on the other, to
the right of his neighbors to the comfortable and unmolested
use and enjoyment of their property.    No one should be re-
strained as to the use of his property, unless such use offends
the legal rights of another.    There are, certainly, instances
of private nuisances, for which an action on the case can be
maintained, yet insufficient to justify interference by injunc-
tion.    This extraordinary and transcendent power should
be exercised only when imperatively necessary to prevent
multiplicity of suits, or irreparable injury, or continuous or
constantly recurring grievances—when, from their irrepara-
ble nature, continuance, or frequent repetitions, the legal
remedies are inadequate to afford full redress.    While it is
not essential that the injury should be strictly continuous,
it must not be only occasional, or accidental.—*Rouse v. Mar-
tin*, 75 Ala. 570; 16 Amer. & Eng. Encyc. of Law, 959.

The plant of defendant was first established in April, 1885,
and was operated and used by Cawthorn and his associates,
for the purpose of lighting the dwellings and stores in the
city of Mobile, until April, 1887, when they sold it to de-
fendant, who has continued its operation, lighting the streets
as well as dwellings and stores.    The house in which com-
plainant resided is a one-story frame house, having four
rooms, with kitchen and servant's rooms, and is situated on
a mound about twelve feet above the level of the street and
the adjacent property.    Many years ago, the streets in that
portion of the city were graded to the level of the wharves,
and the adjacent property, except complainants', cut down
to the level of the streets.    Brick walls were built on the
four sides of complainants' lot, for the purpose of supporting
the embankments.

The bill avers that defendant has a contract with the city
of Mobile, under which it lights the streets of the city with
electricity every night when the moon is not shining, and
for this purpose uses four large boilers and several large
dynamos; the ends of the boilers projecting to within a
few feet of the wall of complainants.    It further avers that,
when the plant is in operation, a dense smoke is produced,
the soot from which, in certain conditions of the at-
mosphere, is frequently blown up and into complainants'
houses, and fills them, unless the windows are closed.
Further, that the machinery, when in operation, frequently
and at intervals makes a loud palpitating noise like the
puffing of a locomotive when pulling a heavy train up-grade,
which noise is sufficiently loud to be heard two hundred
yards away; also, frequently creates a severe vibratory motion

which shakes the surrounding buildings, and especially the buildings owned by complainants. The bill further avers, that the noise, vibrations and smoke are all made in the night-time, and frequently continue from early in the evening until nearly morning; that the noise disturbs the sleep of the occupants of the buildings, and the vibrations are so severe as to make the table-ware upon the tea-table and the windows of the house rattle, the chairs and furniture in the house rock, and to shake the occupants when in bed; that such noise and vibrations not only interfere with the sleep of the occupants, but render them nervous, and make the houses undesirable as places of residence, even for those in health, and in case of sickness would so excite an invalid as to seriously affect speedy recovery, and in certain cases be seriously dangerous to life. The bill further avers, that on several occasions portions of the machinery have burst, or blown out, making a loud noise greatly frightening complainants, causing them to run out into the street; that there is constantly thrown from said machinery steam in large quantities, and hot water which runs down the gutters in front of and around the residence of complainants, to their annoyance; that the proximity of of said boilers and machinery greatly increases the risk from fire, and rate of insurance, also adding great danger from the explosion of the boilers and breaking of machinery.

The answer denies these allegations of the bill, and sets up the great utility of the business to the public; also, that if there were causes of complaint at the commencement of the business, they have been obviated by the application of scientific appliances, and that any inconvenience experienced by complainants could have been prevented with little effort; also, that the acquiescence and fault of complainants induced defendant to invest a large sum of money in improving the plant.

It is difficult, if not impracticable, to formulate a rule accurately defining the acts or facts which will constitute a nuisance under any and all circumstances. We shall not make the attempt. As a general proposition, it may be said, that any establishment erected on the premises of the owner, though for the purposes of trade or business lawful in itself, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes substantial injury to the property of another, or produces material annoyance and inconvenience to the occupants of adjacent dwellings, rendering them physically uncomfortable, is a nuisance. In apply-

ing this principle, it has been repeatedly held, that smoke, offensive odors, noise or vibrations, when of such degree or extent as to materially interfere with the ordinary comfort of human existence, will constitute a nuisance.—*Rouse v. Martin, supra.* This principle has been applied to various kinds of factories and industries located in a city, including gas-works, and the production of light by the operation of a steam-engine and dynamos.—*Cleveland v. Citizen's Gas Co.,* 20 N. J. Eq. 201; *Tocum v. Hotel St. George Co.,* 18 Abbott's New Cases, 340. The averments of the bill clearly make a case of nuisance, calling for its abatement by the Chancery Court; but the denials of the answer, and the affirmative and substantial defenses set up therein, make the necessity of interference turn upon the sufficiency of the evidence, proper legal principles being applied, to show that the electric plant, as now operated and conducted, so materially interferes with complainants' use and enjoyment of their adjacent dwellings as to entitle them to injunctive relief.

From this consideration the evidence relating to the offensive odors may be eliminated, there being no allegation in the bill touching this matter; also, the evidence relating to risk from fire, danger of explosion, depreciated value of the property, and the increased rate of insurance; for such wrongs may be adequately redressed at law. This narrows the inquiry to the degree or extent of the noise, smoke, soot, and vibrations. There is a mass of evidence, many witnesses having been examined by both parties, and the testimony is voluminous. The evidence is conflicting in material respects. Appellants' counsel contend, that the testimony of the contradicting witnesses on the part of defendant is entitled to but little weight, for the reason, that but few of them were ever in the house of complainants, and these only for a short time, and the others live at a great distance. Naturally, the noise and vibrations diminish in proportion to distance; but the force of the argument is impaired by the fact, that one of the most material witnesses resides in the dwelling-house owned by complainants, and mentioned in the bill as subject to the same disturbances, and some of the others in dwellings in the same block, while some of complainants' witnesses reside in dwellings in a different block and across the street. The testimony of defendant's witnesses, having a material bearing upon the inquiry, should not be ignored, but accorded such right as it may be entitled to, when the entire evidence and the construction and operation of the plant are considered. We shall not attempt, however, to follow counsel in their

elaborate discussion of the evidence.    Though the testimony of the witnesses on the part of complainants may be somewhat exaggerated by super-sensitiveness, and an excited imagination, it may be conceded that their evidence strongly tends to show material annoyance and inconvenience caused by the smoke, soot, noise and vibration during the administration of Cawthorn, and even for a time after defendant purchased and operated the plant.

The evidence, however, shows that defendant has made alterations and improvements, especially as to the escape of steam, which have greatly diminished the evils complained of.    As to an establishment of public utility in a city, the rule is, that its lawful use will not be perpetually enjoined, when, by the application of scientific appliances, such alterations in the machinery may be made as will remedy the evils.    In such case, the court will go no further than to require such appliances to be introduced; and in some cases will direct a reference, to ascertain if the evils can be thus remedied.—*Green v. Lake*, 54 Miss. 540; s. c., 28 Am. Rep. 378; 1 High. on Inj., § 787. On the same principle, the court will not make the injunction perpetual, when such appliances have been used, even during the pendency of the suit, and the desired results effected.    The real and important question is, does the manner in which defendant operates the plant, since the alterations and improvements were made, interfere with comfortable use and enjoyment of their residence by complainants to such extent as to create a nuisance, which, when the locality and the circumstances are considered, it becomes the duty of the court to enjoin? The witness Long testifies, that the noise has been diminished exceedingly, and that it "is not a hundredth part of what it was before these changes were made;" and Sossaman says, "I could feel no vibration there, but I know that sometimes, while walking down the street, one can feel a little shaking, which is caused by the running of a dray, and I noticed no more vibrations about that place than the running of a dray might cause.    At the time I speak of the machinery was in motion."    We have especially referred to the testimony of these witnesses, for the reason that Long resides in the dwelling owned by complainants and mentioned in the bill, and Sossaman went to the house at the instance of complainants, to examine and give an opinion; his attention was directly called to the subject.    Their evidence is corroborated by the testimony of several other witnesses.    There is, however, conflicting evidence on the part of complainants.

[English v. Progress Electric Light & Motor Co.]

The evidence further shows, that by a comparatively small expense complainants could avoid the inconveniences and annoyances arising from the vibratory motions. When such is the case, a perpetual injunction will not be granted, full compensation being obtainable at law. In *Rosser v. Randolph*, 7 Porter, 238, the bill was filed to enjoin the erection of a mill, which, it was alleged, would be injurious to the health of the neighborhood, and would drown and render useless a spring on which complainant relied to furnish himself and family with pure water. The mill having been erected, and it not appearing that the health of the community had suffered, the court said in reference to the spring: "By the application of labor, the value of which can be ascertained, or which the defendant, if applied to, might be willing himself to do, the spring can be restored to its original state; thereby giving to complainant the full enjoyment of his spring of water, and at the same time securing to the defendant those rights which appertain to him as owner of the adjacent land." Also, in *Kingsbury v. Flowers*, 65 Ala. 479, where the bill was filed to enjoin future interments in a private burial-ground, it is said: "The apprehension of injury from this course, it is evident, could be quieted by but slight labor expended in drainage—a labor, it may be, if requested, the defendant would have performed, rather than to have been forced into this litigation." These were cases in rural districts; the rule is especially applicable to industrial establishments in a large city.

We do not think the evidence shows that the locality in which the plant was situated is so exclusively devoted to industrial enterprises, or business purposes, or so remote, as to afford defendant immunity on this account. The dwellings of complainant and others in the vicinity were erected long before the plant was established. However, a person can not expect to possess, in a city, the peace, quiet, enjoyment and freedom from annoyances of the country, and must submit to the ordinarily incidental annoyances of living in a city. It has been aptly said: "A person who resides in a large city must not expect to be surrounded by the stillness that prevails in rural districts. He must necessarily hear some of the noise, and occasionally feel slight vibrations, produced by the movements and labor of its people, and by the hum of its mechanical industries. The aid of a court may be invoked to keep annoying sounds within reasonable limits. Every noise, however, is not a nuisance, nor, when produced in the exercise of a lawful occupation, should the strong arm of a chancellor be extended

to suppress it."—*McCaffrey's Appeal*, 105 Penn. State, 253; *Louis. Coffin Co. v. Warren*, 78 Ky. 400; s. c., 57 Amer. Rep. 467. Whether or not the transcendent power of the court should be exercised, under such circumstances, must be determined in view of the relative rights of the parties and the public welfare.— *Gilbert v. Showerman*, 23 Mich. 448.

Unquestionably, the electric plant is of great public utility, and its abatement by injunction would entail heavy loss upon its owners, and, according to the testimony, increased cost of light to the citizens of Mobile. The machinery is of the best quality employed for electrical purposes; its officers and agents are shown to be skillful, and acting in good faith. Efforts have been made with considerable success, and are still being made, to prevent injury and annoyance tu the occupants of adjoining dwellings. One of the chimneys is eighty feet high, and the other seventy, forty or fifty feet higher than the roof of complainant's residence, and sufficiently high to discharge the smoke in the air, so as not to incommode complainant, unless in abnormal conditions of the atmosphere, which occur only occasionally. Though the locality in which the plant is situated may not be of such nature as to defeat its abatement, if its operations cause substantial injury to neighboring dwellings, or material annoyance to the occupants; yet, when by the application of scientific appliances, or by the expenditure of a reasonable amount of labor and money, the evils can be obviated, or diminished so as to amount to no more than are ordinarily incident to a city life, the rights of the parties will be preserved, the infliction of heavy loss prevented, and the public interest subserved, by withholding equitable interference, and leaving the complaining party to pursue the legal remedy.

By the settled rule in this State, a case must be proved which establishes the necessity of a preventive remedy —a case within that class of cases of irreparable or continuous injury which can be adequately redressed only by injunction; and in all cases, where the right is doubtful, and the exercise of the power would interfere with industries promotive of public utility, it becomes the duty of the court to abstain from interfering. In such cases, the proof should be clear and convincing, and the power "should be cautiously and sparingly exercised."—*Ray v. Lyons*, 10 Ala. 63; *Rouse v. Martin, supra.* A careful examination and review of the mass of evidence forces the conclusion, that complainants have failed to establish, clearly and convincingly, a case of imperative necessity. The evidence leaves the mind in

doubt, whether complainants have suffered, since the alterations and improvements were made, any substantial injury, or material discomfort, more than is usually incident to a residence in a city, or which could not be prevented by the application of labor or money, that may be adequately redressed at law.

Affirmed.