# Hundley *v.* Harrison *et al.*

*Bill in Equity for Injunction and for Abatement of Nuisance.*

1. *Private nuisance; equity has jurisdiction to abate nuisance without judgment at law.*—The jurisdiction of a court of equity to enjoin a private nuisance at the suit of a person thereby aggrieved, compelling its abatement, is well established; and where the injuries complained of are permanent, continuous and constantly recurring, it is not necessary for a court of euity, before issuing the injunction, to wait until the thing complained of has been declared a nuisance by a judgment in an action at law.

2. *Same; same; obnoxious odors.*—A court of equity will, at the suit of a person thereby aggrieved, enjoin the use of a tobacco drying house on defendant's premises when said drying house is in such close proximity to complainant's premises as to render the use of the latter by him and his tenants noxious

[Hundley v. Harrison *et al.*]

to their health, comfort and convenience, by reason of the offensive odors and noxious gases continuously eminating therefrom.

APPEAL from the Chancery Court of Madison.

Heard before the Hon WILLIAM R. SIMPSON.

The bill in this case was filed by the appellant against the appellees. The facts of the case are sufficiently stated in the opinion.

OSCAR R. HUNDLEY and TANCRED BETTS, for appellant.—The jurisdiction of a court of equity to restrain the commission or continuance of a nuisance, either public or private, has been well established in this State.—*St. James Church v. Arrington,* 36 Ala. 549; *Kingsbury v. Flowers,* 65 Ala. 484; 1 Brick. Dig. 672, §§ 467-476; *Nininger v. Norwood,* 72 Ala. 277. "Every man has a right to the undisturbed enjoyment of his property, especially to dwell in his homestead freed from the peril of disease and death, caused by artificial constructions erected by his neighbor on his own lands, whatever may be the purpose of such constructions. The right is imbedded in the common law maxim of such frequent use—*sic utere tuo ut alienum non lœdas.*" *Ogletree v. McQuaggs et al.,* 67 Ala. 585; *Whitfield v. Rogers,* 26 Miss. 84; *English v. Elec. L. & M. Co.,* 95 Ala. 264; *Grady v. Walsner,* 46 Ala. 381.

Anything constructed on a person's premises which, of itself, or by its intended use, directly injures a neighbor in the proper use and enjoyment of his property, is a nuisance. If a party should erect a manufacturing establishment in immediate proximity to the dwellings of his neighbors, and in the operation of which, large volumes of smoke, offensive odors, and noxious vapors are emitted, whereby the comfort of the occupiers of the dwellings is materially interferred with, it would certainly present a case requiring the exercise of the restraining or preventive power of a court of chancery." This principle has been decided in numerous cases, both in England and America, and we fail to find a single case where the doctrine is seriously doubted. Relief will be granted whenever the nuisance complained of is

[Hundley v. Harrison *et al.*]

one that is obnoxious to the health, comfort, or convenience of those who are exposed to it, such as disagreeable noises, offensive odors, noxious gases and the like; for damages afford no adequate remedy for such injuries.—*Adams v. Michael*, 38 Md. 123, 17 Amer. Rep. 516; *Imperial Gas Light and Coke Co. v. Broadbent*, 7 H. L. Cases, 600; *Soltau v. De. Held*, 2 Sim. N. S. 133; *Schotts Iron Co. v. Inglis*, 7 App. Cases, 518; *State v. Mobile*, 5 Porter, 279; *Hurlbut v. McKone*, 55 Conn. 31; *Robinson v. Baugh*, 31 Mich. 290; *Society for Estab. Useful Mfg. v. Morris Canal Co.*, 1 N. J. Ej. 157; *Scudder v. Trenton Falls Co.* 1 N. J. Eq. 694; *Cleveland v. Citizens Gas Light Co.* 20 N. J. Eq.; *Babcock v. N. J. Stock Yard Co.*, 20 N. J. Eq. 296; *Atty. Gen. v. Stewart*, 20 N. J. Eq. 415; *Lippincott v. Lasher*, 44 N. J. Eq. 120; *Lasala v. Holbrook*, 4 Paige Ch. (N. Y.) 169; *Hutchens v. Smith*, 63 Barb. (N. Y.) 251; *Dunsbach v. Hollister*, 2 N. Y. Supplement, 94; *Bell v. Blount*, 4 Hawks, (N. C.) 384; *Lining v. Geddes*, 1 McCord Eq. (S. C.) 304; *Bohan v. Port Jervis Gas Light Co.*, 122 N. Y. 18; *Penn. Lead Co's Appeal*, 96 Penn. 116; *Harley v. Merrill Brick Co.*, 83 Iowa 73; *Chappel v. Funk*, 57 Md. 465.

Even if one is engaged in a lawful trade, if he carry it on in such manner as to be a nuisance to his neighbors, he can not only be enjoined from continuing the nuisance, but he can be made to answer in damages, and it is not necessary that the owner should be driven from his dwelling; it is enough that the enjoyment of life and property be rendered uncomfortable.—*Bohan v. Port Jervis Gas Co.*, 122 N. Y. 18, 9 L. R. A. 711; 1 Wood on Nuisances, § 497 and cases cited; *Rex v. White*, 1 Burr. 333; *Fish v. Dodge*, 4 Denio 311; *Catlin v. Valtine*, 9 Paige 575; *Campbell v. Seaman*, 63 N. Y. 568; *Cogswell v. N. H. & H. R. Co.*, 103 N. Y. 10; 4 Cen. Rep. 225; *Carhart v. Auburn Gas L. Co.*, 22 Barb 297; *Mulligan v. Elias*, 12 Abb. Pr. N. S. 259; *Dorr v. Dansville G. L. Co.*, 18 Hun. 274. Nor is it necessary to wait until one's health has been destroyed.—*Walter v. Selfe*, 4 Eng. Law and Eq. 15, 22. Nor is it necessary for a chancellor to wait till noisome trades and unwholesome gasses kill somebody before he proceeds to restrain.—*Dennis v. Eckhardt*, 3 Grant Cas. 393.

[Hundley v. Harrison *et al.*]

It may be contended, that courts of equity, will not enjoin, until plaintiff's right has been established at law. Whatever may have been the rule in this respect in the past, either in England or in this country, it is no longer the rule now. Says the court in the case of *Campbell v. Seaman*, 63 N. Y. 568 (20 Am. Rep. 567): "But now a suit at law is no longer a necessary preliminary, and the right to an injunction, in a proper case, in England and most of the States, is just as fixed and certain as the right to any other provisional remedy. * * * * * It is a matter of grace in no sense except that it rests in the sound discretion of the court, and that discretion *is not an arbitrary one.*" Numerous authorities are there cited to sustain this view of the law, to which we direct the attention of the court. This New York case is quoted approvingly by the Supreme Court of Alabama in the case of *Rouse & Smith v. Martin & Flowers*, 75 Ala. 515. The question is decided *positively* in the case of *Ninninger v. Norwood*, 72 Ala. 277. Chief Justice Brickell, in delivering the opinion of the court, says, "The jurisdiction of the Court to enjoin the erection, or the continuance of private nuisances, compelling their abatement, at the instance of the party aggrieved, is well established. Nor if the right of the complainant is clear, * * * * is it essential that, as a condition precedent to the interference of the court, the right should have been established by a verdict and judgment at law."

R. W. WALKER, *contra.*—When a thing is claimed to be a nuisance, "it must be made to appear that it necessarily works injury, discomfort or annoyance to the property or persons of citizens generally who may be so circumstanced as to come within its influence." It is not enough that particular persons may find it offensive.—*Westcott v. Middleton*, 43 N. J. Eq. 484, 487. "If a man live in a street where there are numerous shops, and a shop is opened next door to him, which is carried on in a fair and reasonable way, he has no ground of complaint because to himself individually there may arise much discomfort from the trade carried on in that

shop."—16 Am. & Eng. Encyc. of Law, 925 note; *Huck-enstine's Appeal*, 70 Pa. St. 107; *Rhodes v. Dunbar*, 57 Pa. St. 287; *Richard's Appeal*, 57 Pa. St. 113. Mere injury to property and discomfort do not warrant injunction.—*Rouse v. Martin*, 75 Ala. 515. When a thing is complained of as objectionable to the senses, it is not to be abated unless it causes actual physical discomfort to persons of ordinary sensibilities and of ordinary tastes and habits, and the use must be unreasonable. The matter is not to be determined by the requirements of a fastidious taste, but by standards prevailing among ordinary people.—*Euler v. Sullivan*, 32 Am. St. Rep. 424; 16 Am. & Eng. Encyc. of Law, 625, 626, note, 648, note. It must cause material discomfort to the occupants of all property within the sphere of its influence. Wood on Nuisances (2d edition), 649.

The rule in this State is not to grant an injunction until the thing complained of has been declared a nuisance by the verdict of a jury in an action at law. The exception is when the proof is "clear and convincing," and the apprehending injury is "vast and overwhelming.—*English v. Electric Co.*, 95 Ala. 268; *Ray v. Lynes*, 10 Ala. 63; *Rouse v. Martin*, 75 Ala. 515; *Clifton Iron Co. v. Dye*, 87 Ala. 468.

HARALSON, J.—Bill filed by the appellant, Hundley, to enjoin a private nuisance.

A public nuisance, according to the authorities, affects the community at large, or some considerable portion of it, such as the inhabitants of a town, and the person therein offending is liable to a criminal prosecution. A private nuisance affects only one person or a determinate number of persons, and is the ground for civil proceeding only.—16 Am. & Eng. Encyc. Law, 926; 1 Wood on Nuisances, §§ 14, 15.

Nuisances *per se* have been defined to be such things as are nuisances at all times and under all circumstances, irrespective of location or surroundings, as things prejudicial to public morals, as disorderly houses; or dangerous to life, as powder magazines, or nitro-glycerine works; or injurious to public rights, as obstructions to highways and navigable streams.—16

Am. & Eng. Encyc. Law, 937; 1 Wood on Nuisances, §§ 24-27.

Mr. Wood lays down the rule as to private nuisances, which seems to be consonant with reason and authority, to be, that a man may do an act on his own land which is not unlawful or wrong,—not using it in such manner as to injure another, for he may not so use his property as to injure another. "When he sends on to the lands of his neighbor noxious smells, smoke, etc., then he is not doing an act on his own property only, but he is doing an act on his neighbor's property also; because every man has a right, by the common law, to the pure air and to have no noxious smells sent on his lands, unless, by a period of time a man has, by what is called prescriptive right, obtained the power of throwing a burden on his neighbor's property."—1 Wood on Nuisances, § 556.

The same author again, in section 562 of his work, says: "In the case of noisome smells, as with nuisances from smoke or noxious vapors, the stenches must be of such a character as to be offensive to the senses, or as to produce actual physical discomfort, such as materially interfere with the comfortable enjoyment of property within their sphere. It is not necessary that the smells should be hurtful or unwholesome, it is sufficient if they are offensive, or produce such consequences, inconvenience or discomfort, as to impair the comfortable enjoyment of property, by persons of ordinary sensibilities,"—such as people generally, in the absence of proof to the contrary, will be presumed to have. "A smell that is simply disagreeable to ordinary persons, is such physical annoyance as makes the use of property producing it a nuisance, whether it be hurtful in its effects or not."—§ 563; 16 Am. & Eng. Encyc. Law, 948; *Campbell v. Seaman*, 63 N. Y. 568, s. c. 20 Am. Rep. 567.

Referring to our own decisions, in line with these authorities, it has been said: "Anything constructed on a person's premises which, of itself, or by its intended use, directly injures a neighbor in the proper use and enjoyment of his property, is a nuisance."—*Grady v. Wolsner*, 46 Ala. 381.

Again in *English v. Progress E. L. & M. Co.*, 95 Ala. 264, it was said: "It is difficult, if not impracticable, to formulate a rule accurately defining the acts or facts which will constitute a nuisance under any and all circumstances. We shall not make the attempt. As a general proposition, it may be said, that any establishment erected on the premises of the owner, though for the purpose of trade or business lawful in itself, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes substantial injury to the property of another, or produces material annoyance and inconvenience to the occupants of adjacent dwellings, rendering them physically uncomfortable, is a nuisance. In applying this principle, it has been repeatedly held, that smoke, offensive odors, noise or vibrations, when of such degree or extent as to materially interfere with the ordinary comfort of human existence, will constitute a nuisance." To the same effect see *Rouse v. Martin*, 75 Ala. 515.

The doctrine has been invoked by appellee in this case, that an injunction should not be granted until the thing complained of has been declared a nuisance by the verdict of a jury in an action at law, the exception being as stated, when the proof is clear and convincing and the apprehended injury is vast and overwhelming. But we apprehend the rule has by recent decisions been extended no further than,—as was declared in *English r. Progress E. L. & M. Co., supra,*—that "a case must be proved which establishes the necessity of a preventive remedy,—a case within that class of cases of irreparable and continuous injury which can be adequately redressed only by injunction; and in all cases, where the right is doubtful, and the exercise of the power would interfere with industries of public utility, it becomes the duty of the court to abstain from interfering. In such a case the proof should be clear and convincing, and the power should be cautiously and sparing exercised."— *Kingsbury v. Flowers*, 65 Ala. 479.

In the well considered case of *Campbell v. Seaman, supra*, it was said that an injunction was formerly and prior to Lord Eldon's time, "rarely issued in the case of a nuisance until plaintiff's right had been established

at law, and the doctrine which seems now to prevail in Pennsylvania, that this writ is not a matter of right but of grace, to a large extent prevailed. But now, a suit at law is no longer a necessary preliminary, and the right to an injunction, in a proper case in England and in most of the States, is just as fixed and certain as the right to any other provisional remedy. The writ can rightfully be demanded to prevent irreparable injury, interminable litigation and a multiplicity of suits, and its refusal in a proper case, would be error to be corrected by an appellate tribunal."

In *Nininger v. Norwood*, 72 Ala. 277, the same doctrine is announced. It was there said: "The jurisdiction of the court to enjoin the erection, or the continuance of private nuisances, compelling their abatement, at the instance of the party aggrieved, is well established. * * *. There is, in the contemplation of the court, a very just distinction between injuries in their nature temporary and fugitive, and injuries permanent, continuous, constantly recurring. In reference to temporary injuries, the intervention of the court may depend upon the adequacy of legal remedies. But, when the injury is permanent, continuous, constantly recurring, there may be a remedy at law, but its inadequacy is obvious. The court of law cannot restore the party complaining to the condition in which he was before the wrong was done, and in which he has the legal right to remain." It was added, referring to the facts of that case, "Nor, if the right of complainant is clear,—if as a matter of law, the lands of the defendants are burdened with the servitude claimed,—is it essential that, as a condition precedent to the interference of the court, the right should have been established by a verdict and judgment at law. Substantial, actual injury has resulted, and there can be no necessity for sending the party to a court of law, for the determination of a mere legal question, compelling submission to the wrong during the pendency of the action."

We have stated the foregoing principles that we may apply the facts of the case in hand to them.

The bill shows, that complainant is the owner of a lot in Huntsville which fronts on Franklin street, im-

proved by him at a cost of about $3,000, in the erection thereon of a two story brick building, the lower story being divided into two offices, fronting on said street, with a front and rear room, each, one of them occupied by complainant and the other by Mr. Betts, his tenant, as law offices. The second story was designed for a photograph gallery, and is occupied as such by Mr. Collins, another tenant of complainant. Since complainant improved his property, the defendants purchased a lot running from the public square back in the rear of, and at right angles to, complainant's premises. On this lot, they erected a three story brick building, which covers only a part of their lot, that part not built on, being a vacant space in the rear of complainant's building. This building is surrounded on each side by other storehouses of the same frontage on the public square, but all longer in depth than defendant's, making a vacant space owned by defendants on the south and in rear of their own, and on the west and in rear of complainant's building, a confined space, surrounded by brick structures, with an alley, eight feet in width, on the south, running east and west.

It is further alleged that since the erection by complainant of the building on his said lot, the respondents have erected on the rear of their said building, and opposite and near the windows of the said law offices and under the windows of said photograph gallery in complainant's building, a tobacco dry-house; that said tobacco dry-house erected by respondents is used by them at frequent intervals, for the purpose of drying tobacco, and when so used, there is emitted from it noxious and offensive odors which permeate the law offices and photograph gallery of complainant's building, causing great annoyance and inconvenience to the occupants of said building, rendering them physically uncomfortable; that these odors are detrimental to the health of complainant and his tenants, and seriously affect the comfortable enjoyment of said premises; that said dry house is located in a place narrowly confined by surrounding buildings; is considerably lower than the second story of complainant's building, with a smoke stack much lower than complainant's said second story,

the smoke and emanations therefrom being frequently carried directly into the windows of said photograph gallery, thereby permeating the second story of said building, rendering the occupants thereof physically uncomfortable, and these odors are detrimental to their health, affecting seriously their comfortable enjoyment of said premises; that said dry-house and the use thereof by the respondents is a private nuisance, causing substantial injury to the property of complainant and the lawful and legitimate use thereof; that the same should be abated, and unless abated, will continue to be such a nuisance, working irreparable injury and damage to complainant's property and its use; that by reason of said nuisance, as set forth, complainant's tenants complained to him, that the same was intolerable to them, and that they would be compelled to vacate said premises unless relieved therefrom, and thus complainant will be deprived of the revenue derived from said property. It is further alleged, that said dry-house is a simple, inexpensive structure consisting of a single compartment, costing in its erection, labor, material, and all other expenses included, not exceeding $50.

The answer, without repeating its averments, it may be stated, denies the material allegations of the bill.

The chancellor on final hearing and proofs dissolved the injunction theretofore granted, and dismissed the bill.

The complainant examined many witnesses to sustain, and the defendants many to disprove the allegations of the bill.

The following facts may be stated as either uncontroverted or as satisfactorily established. The dry-house is a structure about 10x12 feet in width and length by 8 feet high. It is built on the inside of tongued and grooved planks, sheeted on the outside with second-hand sheet iron, or of iron sheets that had been elsewhere used for the same purpose. It has a single opening, a door facing north towards defendants' building and about 14 feet therefrom, with a stove in the center with a pipe extending about 7 feet above the roof. It is within a few feet of the rear of complainant's and Mr. Betts' back offices; is located in a place confined by surround-

ing buildings, is lower than the second story of said buildings, and the only spaces permitting the circulation of air, is an opening of about 23 feet between the building of Mr. Wade, (one store away from and west of defendants' store with an intervening store between, and extending considerably further south than defendants') and the office building of Mr. Speake, including the 8 feet alley between Speake's office and complainant's building.

The process of drying, as detailed by one of the defendants, was to dampen the tobacco with a solution of water, syrup and salt in given proportions, to place it on shelves in the dry-house, when thus dampened, and the fire is started in the stove within and is kept burning until the tobacco is dried out. When thus heated up, a strong odor is emitted from the tobacco differently described by some of the witnesses. Robert Harrison, one of the defendants, described it as the odor of boiled coffee. Mr. O'Reilley, a witness for defendants, described it as having sometimes the odor of coffee and then of sugar burning and then of tobacco, but stated it was neither offensive nor sickening to him. All, or nearly all the witnesses agree that an odor was emitted, but those for defendants generally agreed, that it was not of such a character as to be specially offensive to them. It may be stated, however, as true, that nearly or quite all the witnesses for defendants occupied local positions different from those of the complainant and that complainant's premises occupied a position relative to the dry-house, where the odors from it, if offensive, were more likely to prevail and to be observed. The fact, therefore, that these alleged emanations from the dry-house were not offensive to defendants' witnesses in their several habitations, while admissible and relevant as tending to show the real character and extent of the alleged noxious odors complained of, do not disprove the real character and extent of such odors as observed and felt and testified about, by witnesses more exposed to and brought more directly under their influence on complainant's premises. Let it be observed, that we have no reason to believe that any witness in the case spoke otherwise than truthfully as he believed the facts

to be. That complainant and his father, O. M. Hundley, were more warped by interest to deliver prejudiced statements in evidence, is no more apparent in them than in the defendants, in delivering their testimony. We discover no good reason for distrusting the honesty of the statements of either.

Tancred Betts for complainant testified, he was a lawyer and occupied an office in the Hundley building, and just in the rear, and within 8 or 10 feet of his window, is situated the dry-house of defendants. He says of the building itself, which statement is satisfactorily corroborated by others, that it has an outer covering of sheet iron, and judging from the wooden portion of it that is visible under the eaves from the outside, it is ceiled with floor plank; that it presents the appearance of being erected out of second-hand material, with a number of holes in the iron sheeting, which is evidently of old material, that its joints are not soldered, the building appearing to be loosely constructed, or so open at any rate, that when in operation, he could at times notice the atmosphere surrounding it apparently simmering from heated emanations therefrom.

As to the odor he testified: "The odor is just such as would come from tobacco to which heat had been applied and which had been subjected to such a process as described by Mr. Robert Harrison in his testimony. It is plainly tobacco odor,—a strong tobacco odor,—with a sweetish sort of accompaniment. And it is not only very disagreeable and offensive, but is sickening and pungent and is frequently so heavy in my office, especially in my back office, when this drying house is in operation, that it affects my throat and eyes and nose both frequently and harmfully. It has the effect of making me nervous frequently, and I am satisfied at times it gave me nervous headache. It was simply an abominable odor. It was not merely an odor or smell, but the atmosphere of my room was frequently so laden with it, charged with it, and thoroughly polluted by it, that no human being could breathe that air constantly or largely without serious detriment to his health, as I verily believe from the effect it had upon me, and the character of the odor. I was frequently obliged to close the door between my of-

fices, so as to make the front office habitable," etc. He further testified, that these odors were noticed both in summer and winter, in some respects worse in winter, because there was less ventilation; that with the windows down, the odor was noticeable; that the draft or suction, from the nature of the surrounding buildings and their relative location with the Hundley building, seemed to bring the odor directly from the drying house to his office and it was there all the time. He also stated, that the dry house was in operation ordinarily from two to three days a week, sometimes oftener.

The testimony of appellant himself fully corroborated that of Mr. Betts as to the character and effect of these odors, and was quite as positive as to their continuous existence and noxious character. Collins, his wife and son, who occupied the photograph gallery testified, fully corroborating Betts and Hundley. Mr. Collins stated, that he had given complainant notice that he would be compelled to leave his premises if the odor continued. He characterized it as a very offensive, pungent, strong tobacco odor, which had a very sickening effect, such as would be caused from any vile odor. Mrs. Collins stated, that it was so nauseating, and at times so heavy, that you could taste as well as smell it.

P. L. Brouillette, a physician, described the odor as a disagreeable, sickening, nauseating odor, very deleterious to the physical comfort and health of one whose business compelled him to occupy offices in the Hundley building. And so, in this regard, there was no material difference in the evidence of the others of the eleven witnesses for complainant.

The evidence offered by defendant as to the extent and effect of these odors on the occupants of complainant's building, as has appeared, was more of a negative than of a positive character. Not one of them, as we call to mind, testified with any fullness or certainty as to the conditions prevailing in the Hundley building, as to the alleged odors, but rather concerning them in other buildings and localities, not situated in respect to the dry-house as complainant's building was.

The evidence further shows, that this structure may, at a small cost be removed to the third story of defend-

[Hundley v. Harrison *et al.*]

ants' building where it may be operated conveniently and inoffensively to any one; that complainant offered before this suit was instituted to purchase defendant's property at the price they paid therefor, or if they preferred, to pay the expenses of its removal, if defendants would agree not to restore it.    Mr. Hundley testified, that one of the defendants, Mr. Robert Harrison, agreed at one time to remove the structure to the third story of their building, but eventually declined to do so.    Mr. Harrison testified as to this matter, that he told Mr. Hundley that if he had an elevator in his building it might be convenient to put the dry-house in his third story, but that under present circumstances, it would be a great deal of trouble in carrying material and fuel from the basement up to the third story.    By this he seemed to imply that it was more neighborly and just to put this grievous infliction on complainant and his tenants, rather than incur the reasonable expense and trouble of avoiding it.    Because an erection is cheaper and more convenient to him who builds it in the one rather than in another way, is no reason for his making it a nuisance to his neighbor, to subserve simply his own convenience and pleasure.    He has no right thus to confiscate his neighbor's property and rights.

After a full and careful review of all the evidence, we are borne irresistibly to the conclusion, that this drying house of the defendants as maintained by them, is a most flagrant violation of complainant's rights, and ought to be abated as an unnecessary and harmful nuisance.    If defendants had no place on their lot where they could locate and maintain this structure, without the prejudice as shown to the rights of complainant, this fact would furnish no reason why they should inflict complainant and his tenants with it; but, fortunately, as most manifestly appears, they may remove and place it in their own building at a trifling expense, in relief of complainant.

The decree of the court below will be reversed, and one here entered, restoring and perpetuating the injunction, according to the prayer of the bill, against the further operating of said tobacco dry-house by defendants.

Reversed and rendered.