133 So.2d 192

**MONSANTO CHEMICAL COMPANY**

**v.**

**Joe C. FINCHER et al.**

**7 Div. 427.**

Supreme Court of Alabama.

Sept. 14, 1961.

Knox, Jones, Woolf & Merrill, Anniston, for appellant.

Roy D. McCord and L. D. Martin, Gadsden, for appellees.

COLEMAN, Justice.

This is an appeal by respondent from a decree overruling demurrer to a bill to enjoin a nuisance alleged to be created by the operation of an insecticide plant by respondent just outside the corporate limits of the City of Anniston.

The bill alleges that complainants are each bona fide resident citizens of Calhoun County, and that respondent is a corporation operating its plant as aforesaid.

Appellant, respondent, states the questions in the case as follows:

"There are two basic questions involved in this appeal. The first is whether the appellees, as individuals, can maintain this action for the abatement of what they acknowledge is a public nuisance. The second question is whether, assuming the right of appellees to bring the action, the bill of complaint states sufficient legal grounds for equitable relief by way of injunction. * * *"

We are of opinion that appellees, as individuals, can maintain the bill, and also that the bill states sufficient grounds for an injunction to abate the nuisance complained of.

In pertinent part, the bill of complaint recites:

"2. That on to-wit, the 15th day of January, 1958, the Defendant placed in operation in its plant, which is located just outside of the corporate limits of the City of Anniston, Calhoun County, Alabama, and on the west side of said corporate limits, an insecticide plant; that in and about the operation of said insecticide plant, the Defendant used various chemicals, that sewerage draining from said plant drains along and in a large open ditch, and from said chemicals obnoxious odors and gasses arise which settle upon the adjoining area; that said insecticide plant has been in continuous operation since the said 15th

day of January, 1958, and is in such continuous operation at this time. That prior to the said 15th day of January, 1958, there were no obnoxious odors or gasses arising from the plant operated by the Defendant and located on the west side of said City, but beginning on said date and continuing to the present date, such obnoxious odors and gasses do arise. That in addition to said odors and gasses, and used in connection with the operation of said insecticide plant, there is a large smoke stack from which obnoxious gases, smoke and vapors are emitted, and said gasses, vapors and smoke settle upon the adjoining countryside; that the Plaintiffs own property located within close proximity to said plant of the Defendant, and that the Plaintiffs actually reside in close proximity to said plant and have so resided for the past several years, and that said obnoxious odors, smoke and gasses settle upon the Plaintiffs' homes, dwellings, property, places of business, and thereby create a public nuisance; that said gasses and odors permeate the Plaintiffs' said homes, offices and other places of business, and the stench therefrom is so severe as that on many occasions the Plaintiffs or their families have vomited and have been unable to eat, and that they have, since the operation of said insecticide plant, attempted to shut the doors and windows of their homes and thus prevent the obnoxious odors from entering, and said gasses and odors enter said homes even with the doors and windows shut; that the Plaintiffs and their families have been made seriously sick and their health has been seriously endangered and is continuously being endangered by reason of the unhealthy and unwholesome nuisance created by the Defendant as aforesaid; that their said property has greatly decreased in value and has become, in a large measure, unfit and unsuitable to be used for the purposes for which it was built or bought; and that the businesses operated by the Plaintiffs, or some of them in this cause, has fallen off, and said businesses have been greatly and adversely affected by the serious public nuisance so created as aforesaid."

The rules governing the right of an individual to abate a public nuisance have been stated as follows:

" * * * Generally a public nuisance gives no right of action to an individual, but must be abated by process instituted in the name of the state. An individual complaining of a public nuisance must show some special injury to himself different from the common injury to the public. Walls et al. v. [C.D.] Smith & Co. et al., supra [167 Ala. 138, 52 So. 320, 140 Am.St.Rep. 24]; City of Selma v. Jones, 202 Ala. 82, 79 So. 476, L.R.A.1918F, 1020; McIntosh v. Moody, 228 Ala. 165, 153 So. 182; Louisville & N. R. Co. v. Higginbotham, 153 Ala. 334, 44 So. 872; § 1084, Title 7, Code of 1940." Scruggs v. Beason, 246 Ala. 405, 407, 408, 20 So.2d 774, 775;

and also:

"It is established in this jurisdiction that equity may abate a public nuisance, and that a private person can maintain a bill for abatement of such nuisance when it is shown that such party has suffered a special injury therefrom, which is real and distinct from that suffered by him in common with the public at large, and is so continuous in nature that the legal remedy for damages would be inadequate. Whaley v. Wilson, 112 Ala. 627, 20 So. 922; Jordan v. McLeod, 220 Ala. 672, 127 So. 160; City of Selma v. Jones, 202 Ala. 82, 79 So. 476, L.R.A.1918F, 1020; State v. Ellis, 201 Ala. 295, 296, 78 So. 71, L.R.A.1918D, 816; Russell et al. v. Holderness, 216 Ala. 95, 112 So. 309; McIntosh et al. v. Moody et al., 228 Ala. 165, 153 So. 182; Hundley v. Harrison et al., 123 Ala. 292, 26 So.

294; 29 C.J. 627, § 383." Hanna v. Harman, 230 Ala. 620, 621, 162 So. 109.

This court has sustained the right to an injunction to abate nuisances consisting of emitting obnoxious odors and gases from a tobacco drying house, Hundley v. Harrison, 123 Ala. 292, 26 So. 294; a stable, Kyser v. Hertzler, 188 Ala. 658, 65 So. 967; a sewer dump, City of Selma v. Jones, 202 Ala. 82, 79 So. 476, L.R.A.1918F, 1020; and odors and flies from a live poultry plant, Strickland v. Lambert, 268 Ala. 580, 109 So.2d 664.

■ The law does not require that before a party can abate a nuisance he must show an injury which is unique to him. Strickland v. Lambert, supra.

In the case at bar, the bill alleges that the gases and odors from respondent's plant permeate the homes, offices, and business places of the complainants; that the stench is so severe that on many occasions complainants or their families have vomited, have been unable to eat, and have been made seriously sick; and that the property of complainants has greatly decreased in value. The alleged injury to the respective complainants is an injury to their respective rights to use and enjoy their individual property free from the odors and gases, and is to each complainant an injury in which no one else participates, although others may suffer a like injury to the enjoyment of their separate property. We are of opinion that the allegations of the bill establish a private nuisance or a public one from which the complainants, respectively, suffer a special injury different in kind from that suffered by the public generally; and, therefore, that the complainants, as individuals, are entitled to abate the nuisance alleged in the bill.

■ As to the second proposition, respondent appears to insist that even if the averments of the bill show a nuisance, the bill fails to assert that the nuisance will continue, if not enjoined, or that complainants will suffer irreparable damage or such damage as will authorize the issuance of an injunction.

■ From the allegations of paragraph 2 of the bill quoted above, we conclude that the injury to complainants is an irreparable one; that if the operations of respondent continue, the damage to complainants will continue; and that complainants will be put to a multiplicity of suits at law to obtain judgments for future damage. The injury to complainants is in the nature of a continuing trespass and equity has jurisdiction to enjoin continuing trespasses. This court held that equity would enjoin nuisances similar to that here complained of in Hundley v. Harrison, Kyser v. Hertzler, City of Selma v. Jones, and Strickland v. Lambert, supra. We hold, therefore, that equity has jurisdiction to enjoin the nuisance complained of here.

Respondent appears to argue that the bill fails to allege that respondent's plant operation, and the alleged nuisance caused thereby, will continue. The bill does not so allege in express terms. Paragraph 3 of the bill, however, recites as follows:

"3. That the said Defendant realized its said insecticide plant was causing a disagreeable odor in the community, and on the 19th day of April, 1958, caused to be run an advertisement in The Anniston Star, a newspaper published in Anniston, Alabama, wherein one D. B. Hosmer, Plant Manager for the Defendant, stated the following: '1. The smoke from the incinerator did not dissipate as expected.' (')2. Liquid materials contained a disagreeable odor * * * which create a disturbing condition.' 'From the first day insecticide operations were started here, our engineers have been working full time to eliminate the disturbing conditions arising from such operations'. All of said advertisement(s) had reference to the said insecticide plant mentioned hereinbefore. That on the 18th day of May, 1958, the said

Defendant acting by its said above named Plant Manager, caused another advertisement to be run in the said Anniston Star wherein they stated that the installations to remove smoke and odor from the air-borne effluents from the Monsanto Plant were being installed, and that these installations were designed to eliminate air-borne odors and to minimize smoke from the incinerator. That thereafter the said Defendant caused another advertisement to be run in the said Anniston Star on Sunday, June 8, 1958, in which it was stated that after the new installations had been put in operation, that the new installations were shut down temporarily, and that the Defendant trusted that they would be able to initiate a system of odor removal soon. That thereafter the said Defendant continued to operate, and is continuing to operate, said plant at this time, realizing themselves that they are causing and creating a public nuisance in said operation."

 As insisted by respondent, an injunction operates prospectively and is preventive of future injury. In considering this question, however, the past course of conduct, with the continuance of like conditions, offering the same inducements and opportunities for such wrongful invasion of the rights of complainants, are quite pertinent. Scofield v. Perry Creamery Company, 234 Ala. 560, 176 So. 195.

If respondent does not intend, or threaten, to continue the operation of its plant, then there would appear to be no necessity for an injunction, and if the averments of the bill fail to show such intention, then respondent's point would appear well taken. We think, however, that the bill shows that respondent intends to continue to operate the plant.

The averments of paragraph 3 of the bill expressly state that respondent is operating the plant and knowingly causing the nuisance at the time of the filing of the bill. Complainants allege in paragraph 2 of the bill " * * * that the Plaintiffs and their families have been made seriously sick and their health has been seriously endangered and *is continuously being endangered* by reason of the unhealthy and unwholesome nuisance created by the Defendant as aforesaid * * *." (Emphasis supplied.) We think the averments of the bill must be taken as stating that respondent, unless restrained, will continue the operation of the plant so as to cause the nuisance complained of.

We are of opinion that the bill is not subject to the grounds of demurrer argued by appellant and that the decree overruling the demurrer is without error.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.