# Kingsbury *v.* Flowers.

*Bill in Equity to Enjoin Interments in Private Burying-Ground.*

1. *Multifariousness, and misjoinder.*—In determining whether a bill is demurrable for multifariousness, or for misjoinder of defendants, the inquiry is not, whether each *defendant is* connected with, and has an interest in each branch of the case, but whether relief is sought in respect to matters which are separate and distinct, and a defendant may say he is in danger of oppression by the confusion of such matters: when the object of the suit is single, though the defendants may have separate interests in distinct questions arising out of it, it is proper to bring them all before the court as parties.

2. *Parties to bill for injunction of private burying-ground as nuisance.*—Where a bill seeks to restrain further interments in a private burying-ground as a nuisance, the ground being devoted to that purpose by two persons, who owned separate portions in severalty, both might properly be joined as defendants to the bill; and one of them having died before the bill was filed, his widow having a right of sepulture therein, she and her second husband are properly made defendants with the survivor; and the heirs of the deceased should also be made defendants to the bill, though his personal representative is not a proper party.

3. *Injunction of nuisance.*—A court of equity has undoubted jurisdiction to restrain, by injunction, the commission or continuance of a private nuisance; but, when the thing complained of is not a nuisance *per se,* and has not been declared a nuisance by a judgment at law, a case of pressing necessity must be shown, before the court will interfere to prevent or restrain it.

4. *Same; private burying-ground.*—A burial-ground is not, *per se,* a nuisance to a person living in its immediate vicinity; and when he seeks to enjoin the further use of a private burial-ground near his house, it is not sufficient to allege, in general terms, probable injury to the health of his family by the pollution of the air and water, or other injurious consequences: he must state facts, from which the court can clearly see that such consequences will most probably result.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 3d September, 1880, by William H. Flowers, against John Kingsbury, Gray Thigpen, and his wife, Mrs. Kate Thigpen, formerly the widow of W. H. Thames; and sought to enjoin and restrain, as a nuisance, further interments in a private burial-ground, the property of said Kingsbury and said Thames. The bill alleged,

that in June, 1863, when Kingsbury owned the land, one of his children died of small-pox, and was buried, "by permission of the city authorities of Greenville, on a lot or parcel of said ground, within the limits of said city of Greenville"; that another one of his children died in April, 1865, and was buried in the same lot; that an infant child of W. H. Thames and his wife was also buried there, by permission of said Kingsbury, some time during the year 1866; "that said Kingsbury conveyed a portion of the land constituting said grave-yard, by deed, to said W. H. Thames, but retained the title to the balance of the land in himself"; that said Thames died about the year 1871, or 1872, and was buried there; and that the remains of one Robert Harris were also interred there, in the year 1874, with Kingsbury's permission. The bill contained, also, the following allegations, showing the grounds on which an injunction was asked against further interments:

" Said private grave-yard of John Kingsbury is situated at a considerable distance from the public burial-grounds of said city; and no one is permitted to bury the dead in said private grave-yard, under the laws of said city, except the family of said Kingsbury and the family of said W. H. Thames, now deceased. Complainant alleges, that the graves of said deceased persons are situated a little west of south from his dwelling-house and lot; that the graves of said Kingsbury's children, and the grave of the said Harris, are located about two hundred and twenty-two feet from the well in complainant's yard, and the burial-ground of said Thames is located about one hundred and eighty-eight feet from said well; and he alleges, though said grave-yard is held by separate titles, there is but one common burial-ground for the said families of said Kingsbury and Thames. He further alleges, that said grave-yard is located on elevated ground from the premises on which complainant resides with his family, and that there is a fall of from four to five feet, from the surface of said graves and grave-yard, to the surface of complainant's well of water in the yard of his said premises. The water in complainant's said well is about twenty-six feet from the surface of the earth above it; and the natural course of the surface-water from said grave-yard runs through complainant's yard, and very near his said well of water. Complainant was compelled to cut a ditch, to turn the surface-water and surface-drainage from his yard and well of water. Complainant alleges, that the burial of any more dead in the said grave-yard, known as the private grave-yard of said John Kingsbury, will greatly endanger the health of complainant and his family, by cor-

[Kingsbury v. Flowers.]

rupting the water of his said well, which is in constant use by himself and his family. He is informed by several prominent practicing physicians in said city, which he believes and so charges, that the burial of dead in said grave-yard will greatly endanger the health of himself and family, by corrupting the atmosphere, by reason of the near location of the said grave-yard to complainant's residence. He further alleges, also, that members of both of said families—that is, said Kingsbury's and said W. H. Thames', deceased—are now living, and residing in said city of Greenville, and will, in case of deaths among them, be buried in said private grave-yard, to the great injury of complainant, and to the peril of the health of himself and his family, unless prevented by the restraining powers of this court." The bill alleged, also, that the complainant had endeavored to adjust the matters in dispute amicably, and had bought two lots in the city cemetery, "one for said Kingsbury, and the other for said Thigpens," taking titles to them respectively, and had offered to defray the expenses of removing their dead from said private burial-ground to the public cemetery; and that Thigpen and wife, while declaring their readiness and willingness to make any agreement which might be acceptable to Kingsbury, would not enter into any arrangement without his assent, and he refused to make any agreement whatever, or to give up his right to make future interments in said burial-ground. The prayer of the bill was for a perpetual injunction, restraining future burials in said grounds, and for general relief.

The defendants filed separate demurrers to the bill, assigning numerous causes of demurrer; the assignments by Kingsbury being nineteen in number, by Thigpen twenty-five, and by Mrs. Thigpen twenty-four. The principal causes of demurrer were, in substance—1st, want of equity; 2d, multifariousness, and misjoinder of defendants having distinct rights; 3d, non-joinder of necessary parties, because the heirs and personal representative of W. H. Thames were not made defendants; 4th, indefiniteness and uncertainty in the allegations of the bill; 5th, because the facts stated did not show that the grave-yard had been a nuisance, or would be a nuisance in the future, or would cause irreparable damage to the complainant or his family; 6th, because the grave-yard was not a nuisance in itself, and had not been declared to be a nuisance by a verdict and judgment at law. The chancellor overruled the demurrer, and held that the bill contained equity; and his decree is now assigned as error by each of the defendants separately.

[Kingsbury v. Flowers.]

J. C. RICHARDSON, for appellants.—The intervention of a court of equity by injunction, to restrain a threatened private nuisance, is one of its extraordinary powers, which is always exercised cautiously. If the thing sought to be enjoined is not in itself a nuisance, but only something which may become so under certain circumstances, the court will not interfere until the matter has been tried at law, unless a case of pressing necessity and irreparable injury is clearly shown. Facts must be stated, and not mere inferences, opinions, or conclusions; and allegations on information and belief are not sufficient.—*St. James' Church v. Arrington,* 36 Ala. 548 ; *Dumesnil v. Dupont,* 18 B. Mon. 800 ; *Kirkman v. Handy,* 11 Humph. Tenn. 406 ; *Lake View v. Letz,* 44 Illinois, 81 ; *Ellison v. Commissioners,* 5 Jones' Eq. N. C. 57 ; 2 Story's Equity, §§ 925–6 ; High on Injunctions, 271, § 488, note 1 ; 2 Dan. Ch. Pr. 1636 ; *Ross v. Butler,* 19 N. J. Eq. 294 ; *Williams v. Railroad Co.,* 18 Barb. 222 ; *Higbee v. Camden,* 20 N. J. Eq. 435 ; *Cleveland v. Gas-Light Co., Ib.* 206 ; *Rhodes v. Dunbar,* 57 Penn. St. 274 ; *Rosser v. Randolph,* 7 Porter, 245 ; *Ferguson v. Selma,* 43 Ala. 400 ; *Leigh v. Westervelt,* 2 Duer, N. Y. 618 ; *Wallace v. McVey,* 6 Ind. 303 ; *Wolcott v. Melick,* 3 Stock. N. J. 204 ; *Turnpike Co. v. Yuba,* 13 Cal. 190 ; *Thebaut v. Canova,* 11 Fla. 167 ; *Adams v. Michael,* 38 Md. 125 ; *Fort v. Groves,* 29 Md. 193 ; *Railroad Co. v. Ward,* 2 Black, U. S. 494 ; *Clark v. Lawrence,* 6 Jones' Eq. N. C. 83 ; *Attorney-General v. Steward,* 21 N. J. 340 ; *Duncan v. Hayes,* 22 N. J. Eq. 29 ; *McConnell v. Gibson,* 12 Illinois, 128 ; *Lockard v. Lockard,* 16 Ala. 430 ; *Lancaster v. Railroad,* 62 Ala. 562; 1 Spence's Equity, 672 ; 74 Penn. St. 241 ; *Harrison v. Brooks,* 20 Geo. 537. A cemetery is not, *per se,* a nuisance.—*Ellison v. Commissioners,* 5 Jones' Eq. N. C. 57 ; *Lake View v. Letz,* 44 Illinois, 83 ; 11 La. Ann. 244 ; 28 Indiana, 81 ; Dill. Mun. Corp. § 307. That the discharge of the waters from the higher to the lower ground is lawful, see 21 Iowa, 165 ; 23 Mo. 184. The interments having been made with the sanction and permission of the corporate authorities of Greenville, in the exercise of a lawful authority, the grave-yard is not a nuisance, and its further use will not be enjoined.—1 Duer, N. Y. 488 ; *Trustees v. Utica,* 6 Barbour, 318 ; *Williams v. New York,* 18 Barbour, 246 ; *Saltonstall v. Banker,* 8 Gray, 108 ; 17 N. J. Eq. 75, 83 ; 13 *Ib.* 18, 315. The bill is objectionable for multifariousness, and for misjoinder of defendants.—*Saxton v. Davis,* 18 Vesey, 80, and authorities cited in note. The heirs of Thames, or members of his family, could not be enjoined from the use of the grave-yard, without bringing them before the court

[Kingsbury v. Flowers.]

as parties.—*Prout v. Hoge,* 57 Ala. 30; *Harrison v. Brooks,* 2 Ala. 214; 58 Ala. 328; 61 Ala. 132; 14 N. J. Eq. 268.

D. BUELL, *contra,* cited 2 Story's Equity, §§ 925–27; *Barnes v. Hawthorne,* 54 Maine, 124; *Clark v. Lawrence,* 6 Jones' Eq. N. C. 83; Hilliard on Injunctions, 269; 2 Brickell's Digest, 286, §§ 18–21; *Ib.* 285, § 2; 2 Waite's Actions & Defenses, 337, 127–8; *Lewis v. Stein,* 16 Ala. 214, and authorities there cited.

BRICKELL, C. J.—1. The purpose of the bill is the prevention of future interments, on grounds which are owned in severalty by the appellant, Kingsbury, and the heirs of William H. Thames, deceased. Originally, Kingsbury devoted the premises to the burial of two deceased children; and afterwards, having permitted Thames to bury thereon one of his children, conveyed to him a part of them; and they have since been held for the purposes of burial of deceased members of their respective families. The bill does not unite separate, distinct, independent matters, joining defendants who have not a common interest. The rights and claims of each defendant depend on the same facts, and the right and claim of the complainant is to the same measure of relief against each of them. It may be conceded, for present purposes, that Kingsbury is without legal right as to the prevention of future burials on the part of the ground conveyed to Thames; and that the members of Thames' family, and his heirs, are without legal right as to the prevention of burials on the part of the ground owned by Kingsbury; though there is probable difficulty in maintaining the proposition. But, in considering whether a bill in equity unites distinct matters, which ought not to be joined, and misjoins parties defendant, the inquiry is not, whether each defendant is connected with, and has an interest in every branch of the case. It is, whether relief is sought in respect to matters which are separate and distinct, and a defendant may say he is in peril of oppression by the confusion of such matters. As was said by Vice-Chancellor Sir JOHN LEACH, in *Salvidge v. Hyde,* 5 Madd. 138: "If the object of the suit be single, but it happens that different persons have separate interests in distinct questions, which arise out of that single object, it necessarily folllows that such different persons must be brought before the court, in order that the suit may conclude the whole subject." Here, the bill has the single object of the prevention of burials, upon a plot of ground owned in severalty by the defendants, but which, with a common purpose, they have devoted, and are

devoting to that use; and the use, by the one or the other, is productive of the same injury to the complainant. Suits would be unnecessarily, and capable of being indefinitely, multiplied, if a court of equity should decline to permit the joinder of the defendants who have the same interest, and a decree could not be rendered which would conclude the whole subject, quieting finally the litigation.

2. The statute exempts from liability for the payment of debts " lots in cemeteries, or elsewhere, set apart and held and used by the owner thereof as a burial-place for himself and family."—Code of 1876, § 2823. The part of the burial-ground owned by Thames, on his death, descended to his heirs, impressed with and subject to the uses, to which he had devoted it in his life-time. The widow, as a member of his family, was entitled to share the use—to burial on the grounds, if such was the choice of whoever at her death was charged with the duty of her sepulture. There was manifest propriety in making her. a party to the bill, that her right may be bound by the decree rendered. The heirs of Thames, in whom the title resides, should also be made parties, that they may be bound by the decree. As the grounds can never become the subject of administration, there was no necessity, and there would have been manifest impropriety, in introducing as a party the personal representative of Thames.

3. The jurisdiction of a court of equity to restrain the commission or continuance of a private nuisance, is not doubted. It is not of the ordinary jurisdiction of the court : the court interferes because of the inadequacy of legal remedies. There are no more frequent instances of the interference of the court, than for the prevention of the commission or continuance of the injuries apprehended by the complainant—the material diminution of the comfortable enjoyment of the dwelling-house, and the diminution or destruction of health, by the pollution of water, or of the atmosphere. When the matter complained of is not, in itself, a nuisance ; when it is not, in its very nature, hurtful to others ; when it does not, of necessity, threaten to impair materially the health and comfort of those who may live near it, and the fact that it is a nuisance has not been established at law ; the court abstains from interference, unless a case of pressing necessity is shown by the bill, and by the proofs.—*Rosser v. Randolph*, 7 Port. 238. Nor will the court interfere, when the thing complained of is not in existence, but may be called into existence by threatened acts of the defendant, in the exercise of his lawful dominion over his property, and it is uncertain, dependent upon circumstances

in the future, whether it will or not operate injuriously—*St. James Church v. Arrington*, 36 Ala. 546.

4. The allegations of the present bill are, that the graves now on the grounds are west of south of complainant's dwelling; the one nearest is one hundred and eighty-two feet from the well on his lot{; the whole burial-ground is on more elevated ground than his lot, and there is a fall of from four to five feet from the surface of the graves, to the surface of the well. The natural course of the surface-water, from the burial-ground, is through the lot of complainant, and near to the well. He has been compelled to cut a ditch, to turn the surface-water and surface-drainage from his yard and well. There is the further general allegation, that any further interments on these grounds will endanger the health of complainant and his family, by corrupting the water of the well, and polluting the atmosphere. The first burial on the grounds was in 1863, and the last in 1874; and it is not averred that there was, from either, any pernicious consequence to the complainant, or to his family; nor that any harm, thus far, has been suffered from use of the grounds as a burial-place. These averments are too general and indefinite, to authorize the interference of a court of equity. Facts and circumstances should have been stated distinctly, from which the court could see plainly that, if future interments on these grounds are not prevented, there would be a diminution of the complainant's enjoyment of his dwelling, and at least probable injury to the health of his family. It is not enough to allege simply that such consequences will result. There must be such a clear, precise statement of facts, that there can be no reasonable doubt, if the acts threatened are completed, grievous injury will result.—*Adams v. Michael*, 38 Md. 128; *Begien v. City of Anderson*, 28 Ind. 79.

Burial-places for the dead are indispensable. They may be the property of the public, devoted to the uses of the public; or the owner of the freehold may devote a part of his premises to the burial of his family or friends. It is but a just exercise of his dominion over his own property. Neither adjoining proprietors, nor the public, can complain, unless it is shown that, from the manner of burial, or some other cause, irreparable injury will result to them. It is quite an error to suppose, that of itself a burying ground is a nuisance to those living in its immediate vicinity. Much depends upon the mode of interment, whether it can be justly asserted that, in any event, injury will result from it. The particular locality, and its surroundings, must also be considered. Low, damp grounds, percolated by water, will hasten decomposition, and the soil will be saturated with its products,

Dry, high, well ventilated localities, retard, rather than hasten decomposition; and if in a brief space of time there were numerous burials, there might be great peril of the products of decomposition escaping into, and polluting the atmosphere.

There is not a fact stated in the bill, from which it can be justly inferred, that if the burials on these grounds should be made in the usual mode, or in the mode in which the former burials were made, any injury could result to the complainant. The surface-water flowing through his lot is but taking its natural course; and by cutting a ditch, he has diverted it from his well, avoiding all injury from it, if any could reasonably be apprehended. The apprehension of injury from this source, it is evident, could be quieted by but slight labor expended in drainage,—a labor, it may be, if requested, the defendants would have performed, rather than to have been forced into this litigation.—*Rosser v. Randolph, supra.* It is not such an injury, capable of being remedied so easily, that a court of equity will interfere to restrain; nor will it interfere to prevent the thing from which it is apprehended. Without the averment of special circumstances, from which the court can be satisfied that future burials on these grounds will most probably result in a nuisance, from which the complainant will suffer special injury, irreparable by the ordinary remedies at law, there should not be interference to restrain them.—*Musgrove v. St. Louis Church,* 10 La. Ann. Rep. 431; *New Orleans v. Wardens,* 11 La. Ann. 244; *Ellison v. Commissioners,* 5 Jones' Eq. 57; *Lake View v. Letz,* 44 Ill. 81; *Lake View v. Rose Hill,* 70 Ill. 191; *Begein v. City of Anderson,* 28 Ind. 79.

The bill is obnoxious to several of the causes of demurrer assigned; and the result is, the decree of the chancellor must be reversed, and the demurrer sustained upon all the grounds taken, except so far as we have indicated otherwise; and the cause is remanded, that the complainant may, if he desires, have the opportunity of amendment.