SARAH V. BROWN DEYNZER, Appellant, *vs.* THE CITY OF EVANSTON *et al.* Appellees.

*Opinion filed December 16, 1925.*

MUNICIPAL CORPORATIONS—*when a zoning ordinance cannot be enjoined.* A zoning ordinance adopted after serious study and investigation and upon which public hearings have been held, and which is in accordance with the statute and includes the entire city, cannot be enjoined as being unconstitutional, as a complainant who feels aggrieved by the classifications of the ordinance has recourse to the board of appeals, whose action is reviewable by the courts. (*City of Aurora* v. *Burns, ante,* p. 84, followed.)

FARMER and DUNCAN, JJ., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

MALCOM B. STERRETT, for appellant.

TENNEY, HARDING, SHERMAN & ROGERS, and FRANK T. MURRAY, Corporation Counsel, (HORACE KENT TENNEY, and S. ASHLEY GUTHRIE, of counsel,) for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Sarah V. Brown Deynzer on June 15, 1923, filed her bill of complaint in the superior court of Cook county against the city of Evanston, Harry P. Pearsons, its mayor, Frank S. Anderson, its building commissioner, and Charles W. Leggett, its chief of police, seeking to have the zoning ordinance of that city declared unconstitutional and removed as a cloud upon the title to certain real property and for an injunction against the enforcement of the ordinance. An amended bill was filed, which was subsequently amended and answered by the defendants. A cross-bill by the defendants followed, in which they alleged that the complainant had brought another suit against them by which she sought the same relief with respect to another parcel of real estate; that the suit had been determined against her, and that the adjudication in that suit was conclusive against her right to a decree in this case. An answer denying that ·such was the effect of the prior adjudication was interposed to the cross-bill, and replications to the answers to the bill and cross-bill were filed. After a hearing the bill was dismissed for want of equity, and the complainant prosecutes this appeal.

The council of the city of Evanston on November 18, 1919, adopted a resolution appointing a committee for the study of the subject of zoning. On September 21, 1920, it passed an ordinance by which a zoning commission was appointed. The commission held a number of meetings and visited the entire city, studying existing conditions and considering future developments. Upon notice to the property owners public hearings were given in various parts of the city. An expert, with experience in the preparation of comprehensive zoning plans for a number of cities throughout the country, was employed to assist the zoning commission in the study of the subject and in the formulation of the draft of an ordinance. Under his supervision a series

of maps was prepared, which showed, first, the uses to which the various parcels of property in the whole city were put; second, the different types of structures used for residential purposes; third, commercial and industrial uses and the location and classification of every store or industry within the city limits; fourth, the heights of buildings by stories; fifth, the percentage of lot-occupancy by each building in the city; and sixth, all new buildings erected since 1915. The preparation and verification of these maps occupied about three months. The survey of the city showed the following divisions of property among various uses:

| Uses | Acreage | Percentage of City's Area |
|------|---------|---------------------------|
| One-family dwellings ............ | 902.5 | 19.2 |
| Two-family flats ................. | 2.7 | .06 |
| Tenements and apartment houses.. | 45.6 | 1. |
| Hotels ......................... | 4. | .1 |
| Schools, churches, etc............ | 113.8 | 2.4 |
| Public garages.................. | 4.6 | .1 |
| Stores.......................... | 36.9 | .7 |
| Light industries ................ | 64.3 | 1.4 |
| Industries of the nuisance type.... | 42.9 | .9 |
| Vacant property . ............... | 2279.8 | 48.7 |

After the completion of this work a tentative draft of a zoning ordinance was prepared and submitted to the zoning commission. It was considered by the commission at a series of conferences, changes were made in it, and a draft of the ordinance as changed was published. Public hearings upon the revised draft followed, at which persons interested were heard and further changes were made in the draft. After these hearings had been concluded the proposed ordinance in its final form was submitted to the city council. It was passed by that body January 18, 1921.

The first section of the zoning ordinance contains definitions of various terms used in the ordinance. The second section, in order to classify, regulate and restrict the location of trades, industries and buildings erected or altered

for specified uses, divides the city into five "Use Districts," known as "A" residence district, "B" residence district, "C" commercial district, "D" industrial district and "E" unrestricted district. The boundaries of these districts are shown upon a map which is made a part of the ordinance. The section concludes with the paragraph: "Except as hereinafter provided, no building shall be erected or altered, nor shall any building or premises be used for any purpose other than is permitted in the use district in which such building or premises is located." Section 3 provides that all buildings and premises in the "A" residence district, except as otherwise provided, shall be erected for and used exclusively as (1) single-family dwellings; (2) churches and temples; (3) schools and colleges; (4) libraries; and (5) farming and truck gardening. The usual accessories located on the same lot are permitted. By the fourth section all buildings and premises in the "B" residence district, except as otherwise provided, shall be erected for and used exclusively as (1) any use permitted in the "A" residence district; (2) tenement houses; (3) hotels; (4) private clubs and fraternity houses; (5) boarding and lodging houses; (6) institutions of an educational, philanthropic or eleemosynary nature; (7) nurseries and greenhouses; and (8) public garages and their accessories, subject to compliance with present or future ordinance requirements. In the fifth, sixth and seventh sections the uses to which buildings and premises may be put in "C" commercial district, "D" industrial district and "E" unrestricted district, respectively, are defined, but it is not necessary for the purposes of this case to specify them here. The eighth section provides: "The lawful use of a building or premises existing at the time of the adoption of this ordinance or thereafter destroyed or partially destroyed by fire or other casualty or by voluntary act of the owner may be continued, although such use does not conform with the provisions hereof; and such use may be extended throughout the building or prem-

ises, subject to lawful regulations now or hereafter enacted. Whenever a use district shall be hereafter changed, any then existing non-conforming use in such changed district may be continued or changed to a use of a similar character, provided, all other regulations governing the new use are complied with. Whenever a non-conforming use shall be changed to a conforming use, such premises shall not thereafter be changed to a non-conforming use." By section 9 of the ordinance the city is divided into three "Height Districts," known as the thirty-five-foot height district, the forty-five-foot height district and the eighty-foot height district. The boundaries of these districts are also shown upon a map attached to and made a part of the ordinance. The section provides that no building shall be erected or altered to exceed in height the limit established by the ordinance for the district in which such building is located. The tenth, eleventh and twelfth sections, respectively, provide that no building in the thirty-five-foot height district shall exceed thirty-five feet, or two and one-half stories and basement in height; in the forty-five-foot height district forty-five feet, or three stories and basement in height; and in the eighty-foot height district eighty feet, or seven stories and basement in height. The requirements in the height districts are by section 13 made subject to certain specific exceptions and regulations.

In order to regulate and limit the intensity of the use of lot areas and to regulate and determine the area of the yards, courts and other open spaces within and surrounding buildings thereafter erected, the city is by section 14 of the ordinance divided into three "Area Districts," known as the "A" area district, the "B" area district and the "C" area district. The boundaries of these districts are shown upon a map which is made a part of the ordinance, and the section concludes with the provision that no building shall be erected, nor shall an existing building be altered, enlarged or re-built, nor shall any open spaces surrounding any build-

ing be encroached upon or reduced in any manner, except in conformity with the regulations established by the ordinance for the district in which such building is located. Sections 15, 16 and 17 prescribe the minimum dimensions of yards, or yards and courts, and the intensity of use of lot areas by buildings in the "A," "B" and "C" area districts, respectively. The eighteenth section subjects the requirements in the area districts to certain exceptions and regulations. The nineteenth, twentieth and twenty-first sections provide for the issuance of occupancy, building and use permits. Section 22 concerns the interpretation and purpose of the ordinance. Penalties for violation of the ordinance are prescribed by the twenty-third section. In case of a conflict between the zoning ordinance and existing ordinances, section 24 provides that the former shall govern. Section 25 sets forth certain rules which shall apply where uncertainty exists with respect to the boundaries of the various districts shown on the maps. Section 26 limits the invalidity of any section or provision of the ordinance to the section or provision concerned; and the twenty-seventh section permits changes and amendments in the boundaries of districts or the regulations established, and prescribes the proceedings to be taken to effect such changes or amendments.

Appellant's property is bounded on the east by Lake Michigan, on the south by Milburn street, on the west by Sheridan road, and on the north by the United States government lighthouse property. Its area equals an average city block. In 1897 appellant purchased approximately the east two-thirds of her present tract. Subsequent purchases in 1912 and 1914 extended her ownership west to Sheridan road. Her house is a twelve-room structure, consisting of three stories and an English basement, about 90 feet long, 55 feet wide and 50 feet in height. The house is located about 150 feet west of Lake Michigan, 54 feet north of Milburn street, 342 feet east of Sheridan road and 175 feet

south of the north boundary of her property. She has spent over $50,000 for shrubbery, trees and flowers in beautifying her grounds. Her property is situated within "A" residence district, thirty-five-foot height district and "A" area district. North of her property are the government lighthouse, about 100 feet tall, the residence of the lighthouse keeper, a garage, a building containing a fog horn, and a small brick building. The lighthouse and fog horn are about 35 feet north of appellant's north boundary. Beyond the lighthouse property and east of Sheridan road is a tract of land improved by two residences. Still farther north is a parcel of land facing west on Sheridan road for nearly 500 feet, upon the northeast corner of which, near the lake, another residence is located. The northwest corner of Sheridan road and Milburn street is vacant, and its frontage of 111 feet on Sheridan road is owned by appellant. North of this parcel, facing east on Sheridan road, are three residences. The Sheridan road frontage of the block immediately north of these residences, from Central street to Clinton street, is also vacant. To the south of appellant's property, and facing north on Milburn street, is a parcel of land almost equal to appellant's in area. It is improved by a brick residence. South of this property, and fronting on Lincoln street, is the Evanston pumping station, which is a brick building with a tall smokestack. West of the pumping station, and at the northeast corner of Sheridan road and Lincoln street, is the city's filtration plant. At the foot of Lincoln street is a bathing beach, at which a concession stand is licensed by the city. East of Sheridan road and south of Lincoln street is the site of Northwestern University, occupying approximately ninety acres. Here are located the various buildings of the university, including the library and the Patten gymnasium, as well as dormitories and fraternity houses.

Evanston has approximately 50,000 inhabitants. The city extends about three miles along Lake Michigan and its

width from east to west is about two miles. The Milwaukee division of the Chicago and Northwestern railway runs northwesterly through the city and divides it into the east and west sides. The factories in Evanston, few in number, are located west of the railway. Appellant's property is situated in the northeastern portion of the city. On the questions of the number of apartment buildings in Evanston and their proximity to appellant's property the evidence is in dispute. Appellant testified that while her count was not accurate she believed there were between four hundred and five hundred buildings of that character. On behalf of appellees the zoning expert testified that the number was about one hundred; that practically all were located in the southeastern portion of the city, and that there was not an apartment building within 4000 feet of appellant's residence. On the contrary, a real estate broker called by appellant testified that there were five apartment buildings, all erected prior to the passage of the zoning ordinance, between 1410 and 2700 feet distant from appellant's residence.

Appellant desired to construct an apartment building on the site of her residence and had plans prepared for that purpose before the enactment of the zoning ordinance. After that ordinance had been passed she made application to the city council for a re-classification of her property to a "B" residence district, an eighty-foot height district and a "B" area district, but the request was denied. Appellant testified that her ground would be worth about four times as much for apartment building purposes as for a single residence. The real estate broker testified that while in his opinion her ground was worth $150,000 for residence purposes, it would be worth at least three times as much if improved by an apartment building. Another witness for appellant thought the value of her land was about one dollar per square foot, but if improved by apartments its value would be trebled. In the opinion of witnesses for appellees there would be

no great difference in the value of appellant's land whether used for a single residence or for apartments.

A reversal of the superior court's decree is sought by the appellant upon various grounds, which, however, may be reduced to four, viz.: (1) That the zoning ordinance is unconstitutional; (2) that the ordinance takes her property for public use without just compensation and deprives her of her property without due process of law, in violation of the State and Federal constitutions; (3) that, since the ordinance is void, a court of equity will remove it as a cloud upon the title to her property and restrain its enforcement; and (4) that the classification of appellant's property by the ordinance is arbitrary, discriminatory and unreasonable and was made for the express purpose of preventing appellant from erecting an apartment building upon her property.

The first and second contentions were determined adversely to appellant in *City of Aurora* v. *Burns,* (*ante,* p. 84.) The third contention is predicated upon the invalidity of the ordinance. Since this assumption is erroneous, the conclusion drawn therefrom by appellant necessarily fails.

The zoning ordinance was the result of study and investigation during many months. Expert assistance was employed in formulating it. Public hearings were held upon the ordinance, at which interested parties were heard. The whole city was included within its provisions. We cannot upon this record say that the ordinance is an unreasonable exercise of power, without rational relation to the public health, morals, safety or general welfare. If appellant feels that she has been aggrieved by the classifications of the zoning ordinance her recourse is to the board of appeals. The action of that body is reviewable by the courts.

The decree of the superior court will be affirmed.

*Decree affirmed.*

FARMER and DUNCAN, JJ., dissenting.