(112 So. 739)

**HIGGINS & COURTNEY v. BLOCH et al.**
(1 Div. 413.)

Supreme Court of Alabama. April 28, 1927.

**Nuisance ⬡⟿33—Evidence held to show undertaking establishment constituted nuisance.**

Evidence *held* to show undertaking establishment, alleged to be situated in residence section, constituted nuisance, maintenance of which could be enjoined.

Thomas, J., dissenting.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Bill in equity by Jacob D. Bloch and others against John R. Higgins and Harry D. Courtney, doing business as Higgins & Courtney, to enjoin the maintenance of a nuisance. From a decree for complainants, respondents appeal. Affirmed.

See, also, 213 Ala. 209, 104 So. 429.

Smiths, Young & Johnston, of Mobile, for appellants.

Equity will not restrain that which is not a nuisance per se, upon the mere claim that the property may be used or the business so conducted as to constitute a nuisance. St. Louis v. Knapp, Stout & Co. (C. C. A.) 6 F. 221; Westcott v. Middleton, 43 N. J. Eq. 478, 11 A. 490; Faucher v. Grass, 60 Iowa, 505, 15 N. W. 302; First Ave., etc., Co. v. Johnson, 171 Ala. 470, 54 So. 598, 32 L. R. A. (N. S.) 522; Dean v. Powell Und. Co., 55 Cal. App. 545, 203 P. 1015; Nevins v. McGavock, 214 Ala. 93, 106 So. 597. The burden of proof was upon the complainants to establish the allegations of their bill, the allegata and probata must correspond. Alexander v. Taylor, 56 Ala. 63; Floyd v. Ritter, 56 Ala. 356. (For further brief, see 213 Ala. 210, 104 So. 429.)

Gaillard, Mahorner & Arnold, of Mobile, for appellees.

An undertaker's establishment in a residential section is a nuisance, and the utmost sanitary precaution, skill, and' tact cannot save it from its nuisance character. The existence of other objectionable places of business or semibusiness in near proximity to the residential area encroached upon is no justification for the intrusion of an undertaker's establishment. Beisel v. Crosby, 104 Neb. 643, 178 N. W. 272; Densmore v. Evergreen Camp, 61 Wash. 230, 112 P. 255, 31 L. R. A. (N. S.) 608, Ann. Cas. 1912B, 1206; Goodrich v. Starrett, 108 Wash. 437, 184 P. 220. A new element added to the common-law definition of nuisance is the comfortable enjoyment of one's property. Everett v. Paschall, 61 Wash. 47, 111 P. 879, 31 L. R. A. (N. S.) 827, Ann. Cas. 1912B, 1128; Code 1923, § 9271; Higgins v. Bloch, 213 Ala. 209, 104 So. 429. (For further brief, see 213 Ala. 210, 104 So. 429.)

THOMAS, J. The location of the defendants' business is Government street, at its intersection with Scott. The references to death by appellees' counsel may well be reproduced here. They are:

"The literature of all the ages shows that as a race we fear death, we abhor it, we shrink from it, we hide it from our sight; the heart of every normal human being knows this and need not be told it, nor testimony produced to prove it; the courts declare it to be a fact of common knowledge. Nearly 4,000 years ago Abraham, in purchasing a burying ground from the children of Heth, stated to them that he wanted it, 'That I may bury my dead out of my sight.' Nearly 1900 years ago the great Apostle Paul concluded his wonderful treatise on death and Christ's ultimate victory over it, by the exclamation, 'Oh death, where is thy sting!' and Papini in his recent beautifully written Life of Christ says: 'The first couple

had as their duty to love God and to love each other. This was the first covenant, weariness unknown, grief unknown, unknown death and its terror !' " ,

It may be admitted that decisions and statutes have added somewhat to the common-law definition of nuisance—the free use by the complainant of his property in its ordinary and legitimate use. Woodstock Operating Co. v. Quinn, 201 Ala. 681, 79 So. 253; East v. Saks, 214 Ala. 58, 106 So. 185. The law of nuisance has been given statement somewhat by our statutes (sections 9271, 9274, of the Code of 1923). And the general effect of damages declared in sections 9275, 9276, of the Code is thus stated:

"If, however, a public nuisance causes a special damage to an individual, in which the public do not participate, such special damage gives a right of .action. * * * A private nuisance may injure either the person or property, or both, and in either case a right of action accrues."

See Higgins v. Bloch, 213 Ala. 209, 104 So. 429 (an undertaking establishment); Romano v. B. R. L. & P. Co., 182 Ala. 338, 62 So. 677, 46 L. R. A. (N. S.) 642, Ann. Cas. 1915D, 776 (to enjoin the maintenance of gas reservoir); Harris v. Randolph Lumber Co., 175 Ala. 148, 57 So. 453 (a planing mill in the residential district of a city); Simonetti v. Carlton, 17 Ala. App. 105, 82 So. 553; St. James' Church v. Arrington, 36 Ala. 546, 76 Am. Dec. 332 (maintenance of stables in proximity to residences).

The decree from which the appeal is taken was that the business of an undertaker and funeral director as maintained or carried on by the respondents, at the place indicated in pleading 5, "is a nuisance in the particular locality," and that the complainants are entitled, "by way of relief, to the abatement thereof, and to a permanent injunction against its maintenance or continuance." The decree is duly presented for review by assignment of error and argument of counsel.

The burden of·proof is upon the complainant, and allegata and probata must correspond. Dinkins v. Latham, 202 Ala. 101 (5) 79 So. 493; In Alexander v. Taylor, 56 Ala. 60, 63, Judge Stone said:

"It is a cardinal rule of chancery law that the allegata and probata must correspond in every substantial element of complainant's cause of action. A case for equitable relief must be shown by the bill, and substantially the same case must be shown in the proof, or in the admissions of the pleadings; and, as averments without proof, or proof without averments, will, neither of them, entitle a party to relief; so, if the bill show one cause of action, and the proof another, though each disclose a ground for equitable relief, yet, for the variance, the bill must be dismissed, unless the variance be healed by an amendment." Floyd v. Ritter's Adm'r, 56 Ala. 356.

It was, in effect, stated on former appeal that the business of an undertaker is not a nuisance per se, unless made so by its location or the manner of its conduct. Higgins v. Bloch, 213 Ala. 209, 211 (4, 5), 104 So. 429. To like effect are earlier decisions of this court in Kingsbury v. Flowers, 65 Ala. 479, 39 Am. Rep. 14; Bellevue Cemetery Co. v. McEvers, 168 Ala. 542, 53 So. 272; Nevins v. McGavock, 214 Ala. 93, 106 So. 597.

It follows that in this jurisdiction equity will not restrain the conduct of business or use of property, which is not a nuisance per se, upon the mere apprehension that the same may be located and conducted or used so as to constitute a nuisance. Kingsbury v. Flowers, 65 Ala. 479, 484, 485, 39 Am. Rep. 14; St. James' Church v. Arrington, 36 Ala. 546, 76 Am. Dec. 332. The rule for the determination employed is that facts are averred and proved to the satisfaction of the court that by reason of its location and future conduct of the business or use of property will "most probably result in a nuisance, from which the complainant will suffer special injury, irreparable by the ordinary remedies at law" (Kingsbury v. Flowers, supra); that the "threatened acts of the defendant, in the exercise of his lawful dominion over his property" will result injuriously to the complainant's paramount or superior right of the use and enjoyment of his property similarly situated in that locality (St. James' Church v. Arrington, supra); and in determining whether a given business, plant or line of conduct is a nuisance by reason of "its location," or place of operation or prosecution, "consideration must be given to its effect upon persons of ordinary sensibilities" similarly situated, and not by the sensibilites of persons of "very delicate and fastidious taste and sensibilities," and must be such as to be a nuisance to persons of "average mental and physical conditions" and of "normal sensibilities and tastes similarly situated" (First Ave. Coal & Lumber Co. v. Johnson, 171 Ala. 470, 476, 477, 54 So. 598, 32 L. R. A. [N. S.] 522).

The tests employed in Deegan v. Neville, 127 Ala. 471, 29 So. 173, 85 Am. St. Rep. 137, were probably of irreparable injury and destruction, by way of repeated trespasses of the right of a due and full enjoyment of an estate and the inadequacy of legal remedies to compensate (Woodstock, etc., v. Quinn, 201 Ala. 681, 79 So. 253); that the trespass to complainant's grounds was continuous, and for which the law furnished no adequate relief and was irreparable. In East v. Saks, 214 Ala. 58, 60, 106 So. 185, 187, it was said:

"The case of Central I. & C. Co. v. Vandenheuk, 147 Ala. 546, 41 So. 145, 6 L. R. A. (N. S.) 570, 119 Am. St. Rep. 102, 11 Ann. Cas. 346, where injunctive relief against the blasting of fragments of rock upon the complainants' premises was sustained, differed from

the instant case only in the circumstance that the premises upon which the rocks were thrown were occupied by the complainant and his family as a dwelling place, whereas here the premises were used only for agriculture and pasturage. But this difference, under the showings of the bill, is one of degree merely and not one of kind. If a property owner is entitled to injunctive relief against the menace of flying rocks about his home, we can see no sound reason for denying it when the menace is to the safety of those who have occasion to be upon other lands in the course of their ordinary and legitimate use. * * *

"In a case like this it is apparent, also, that the costs and expenses of repeated actions at law would probably exceed the amounts severally recovered, and the remedy at law would for that reason be inadequate. Walters v. McElroy, 151 Pa. 549, 25 A. 125; 32 Corp. Jur. 141, § 186."

And in Simonetti v. Carlton, 17 Ala. App. 105, 82 So. 553, the employed test was whether or not the stable maintained in close proximity to a residence or in a residential section of a city was so kept that it was unsanitary and emanated odors during a period of a year, and the same spread over the adjoining residential property. And it was declared on appeal from ruling on demurrers in this case that "the inconvenience caused by it must not be fanciful or such as would affect only a person of a fastidious taste (Higgins v. Bloch, 213 Ala. 211, 104 So. 429), but should be such as would affect an ordinarily reasonable man (City of Selma v. Jones, 202 Ala. 82, 83, 79 So. 476, L. R. A. 1918F, 1020).

The rule or test employed in Westcott v. Middleton, 43 N. J. Eq. 478, 11 A. 490, was that the "injury or hurt must be such as would affect all reasonable persons alike similarly situated."

The effect of Hundley v. Harrison, 123 Ala. 292, 26 So. 294, English v. P. E. L. & M. Co., 95 Ala. 259, 264, 10 So. 134, and Rouse v. Martin, 75 Ala. 515, 51 Am. Rep. 463, was where the injury was permanent, continuous, or constantly recurring, and though there may be a remedy at law, it was obviously inadequate. Nininger v. Norwood, 72 Ala. 277, 47 Am. Rep. 412.

The burden of proof was upon the complainant not only to duly shape his pleading, but to prove the same substantially as alleged. In the instant bill, the complainants catalogue the cause of their injury and conclude with the averment:

"All the things enumerated in this paragraph are being done constantly in, upon and from such establishments, by day and by night; and nearby residents are forced to be aware thereof by the senses of seeing, hearing, and smelling,"

—and rest their case upon the several things so enumerated. It is a further rule that, if any doubt exists as to the right to injunctive relief under the evidence, it must be resolved against the pleader having the burden of going forward with the evidence, since the case substantially alleged must be made out by the evidence. Alexander v. Taylor, 56 Ala. 60, 63; Floyd v. Ritter, 56 Ala. 356; Dinkins v. Latham, 202 Ala. 101, 106, 79 So. 493.

There is no evidence that communicable diseases have spread from defendants' place of business, or that the value of their property or that in said vicinity has depreciated. The reasonable inference is to the effect that said properties are worth more for business purposes than for residences. The evidence fails to show that human bodies, by reason of the fact of public execution, have repeatedly attracted or caused large crowds to collect about said premises and locality, or that human bodies of the dead have been *constantly* taken from defendants' place day and night, or that noise and offensive odors will constantly emanate from said premises. It is true, there is evidence of the taking and removal of said bodies, from time to time, in the conduct of that business, and there is some noise in the preparation of the cheaper grade of coffins and some odor from disinfectants and dead bodies.

If, under our statute and former decisions, the bill makes a case within that definition, there is evidence to the effect that the strict residential character of the locality in former days has been somewhat impaired by the encroachments of business and semibusiness, religious or social establishments or centers, viz., the First Baptist Church, two blocks west; Zion Church, two blocks around the corner, on Church and Bayou streets; the Marriott Tire Shop, three blocks away on Broad street; a two-story apartment house on the south side of the street, second block west of Scott street; a drug store two blocks west of Scott, on southwest Jefferson and Government streets; building on south side of Government and located in second block east of Scott street, used as combined residence and storage place; the telephone company's warehouse; Seamen's Home or Christian Science Church; tin shop on Conti street —closed at the time testimony was taken; clubhouses; the Old Church Street cemetery, three quarters of a block from Government and a distance of 225 feet from the locus in quo and residence of Mr. Bloch, and other places of like character to the east show the nature and extent of the encroachments upon what was formerly and averred to be a strictly residential section of Mobile, or in the heart of the most popular part of residential section of that city. The situation is described by the witness Duggan as follows:

"It is a fact that the city is growing, and for residential purposes, right down towards Magnolia cemetery. It is a fact that it is the tendency of people who desire residences to go further and further west all the time. In answer to your question, 'Taking Broad street as the western line, isn't property east of Broad

street becoming less valuable all the time as residential property?' I answer, There are two answers to that. Apartment houses, if they are classed as residences, it would be an excellent location for them. As to private residences, it is a different proposition. In time, no doubt, you will find business houses all the way to Broad street. How long that is off, I do not know. It is a fact right now that property east of Broad, on Government, is becoming less valuable every day as private residential property, and less and less desirable for that purpose."

The tendency of growth and its effect upon values in the locality in question is thus told by witness Glennon:

"I have no reason to believe that the residences of Mrs. Quigley, Dr. Mastin, and Mr. Bloch are any less valuable or less desirable and acceptable to them for residential purposes than they were before Higgins & Courtney moved to their present location; however, they are more valuable now than they were a year ago. I do not think they are less desirable to them for residential purposes than they ever were. I suppose they value them for residential purposes just as much as ever since they ever owned them. The undesirability of it for residential purposes would depend upon such encroachments for business that may be permitted. As the business grows up the street, they are going to become less desirable for residential purposes, of course. Dr. Gaines' place, at the northwest corner of Jefferson and Government street, has been sold. Yes; Mr. Taylor has given an option on his place. I do not know to whom that option was given. He did not tell me. He simply notified me not to do any repairs. No, sir; I did not ask for an option on Mrs. Quigley's house. I could sell it, though, if she would put a fair price on it."

To like effect was the evidence of Mr. Fearn, saying:

"In answer to your question: 'If you consider Government street, between Broad street on the west, and Royal street, on the east, purely as a residential proposition, would you say the value of property has increased or decreased in the last five or six years for this particular purpose—for the particular purpose of residences?' I answer, well, its desirability has decreased during the past five or six years, as residential property. Property in other portions of the city is easier to sell for residential purposes than property between Royal and Broad streets, on Government. The property on Government street, between Royal and Broad streets, has increased for business purposes. The demand is growing daily for it for business purposes. It would be difficult to sell a residence on Government street, between Royal and Broad, for residential purposes at the present time. I do not think I would have any difficulty in selling it, for a reasonable value, for business purposes—anywhere along in there. It would sell readily for business purposes. Government street, between Royal and Broad streets, was at one time considered one of the principal resident streets in the city of Mobile; but now it is, in my opinion, and

I think the general opinion of people who think about it, that it is going into business, and it is no longer considered a resident street at all between those two points you mention."

The majority are of opinion and hold that the averments of the bill were substantially proved and the decree should not be disturbed.

Affirmed.

ANDERSON, C. J., and SAYRE, SOMERVILLE, GARDNER, BOULDIN, and BROWN, JJ., concur.

THOMAS, J., dissents.