(129 So. 84)

**WHITE et al. v. LUQUIRE FUNERAL HOME et al.**

**6 Div. 435.**

Supreme Court of Alabama.

March 27, 1930.

Rehearing Denied June 26, 1930.

Harsh & Harsh and Frank S. White, Jr., all of Birmingham, for appellants.

Amzi G. Barber, of Birmingham, for appellees.

BOULDIN, J.

Bill to enjoin the erection and operation of a funeral home in the immediate neighborhood of the residences of complainants.

In the main, the controlling facts are not in dispute. The court below having heard the testimony orally and in great detail, we follow him on such issues of fact as are in dispute, unless the weight of evidence is so opposed to his decision as to convince us that his finding was clearly wrong.

With this rule in mind, we seek to give a brief statement of pertinent facts.

The proposed funeral home is of modern purpose and design. Bodies of the dead are received from homes or elsewhere, prepared for burial, then disposed of as directed; sometimes returned to the homes from which they came, sometimes shipped to other points, and frequently held for funeral exercises in the chapel, whence the funeral procession proceeds to the cemetery.

Equipment includes ambulances, hearses, and cars for use in funerals.

The site fronts west on Twenty-Fourth street between Eleventh and Twelfth avenues in the city of Birmingham. The block, from Twelfth avenue on the north to Eleventh avenue on the south is some 460 feet in length, and some 400 feet in depth between Twenty-Fourth and Twenty-Fifth streets. This block is bisected by an alley 20 feet wide running north and south and another running east and west, cutting it into four rectangles of about equal area.

The funeral home is located just north of the east and west alley. Just south of this alley, fronting also on Twenty-Fourth street, is the residence owned and occupied by complainant Murray C. White and family. The distance of this residence from the funeral home is about 25 feet.

Ambulances, hearses, etc., pass in and out through the alley. Next south of Murray C. White is the residence formerly owned and occupied by Captain Frank S. White, now deceased, and at present owned and occupied by complainants Frank S. White, Jr., W. T. White, and Marguerite White. This property fronts also on Twenty-Fourth street 150 feet, extending to Eleventh avenue.

Other complainants own and occupy residences located on the west side of Twenty-Fourth street fronting toward the funeral home. One complainant owns a residence to the rear of and across the north and south alley from the funeral home. Complainant Dr. S. H. Wallace owns the Fraternal Hospital, occupying the southeast quarter of the same block, fronting on Twenty-Fifth street and Eleventh avenue, the rear of the hospital premises being across the alley from the rear of the White properties, and cornering diagonally across the alley from the funeral home.

Under our statute, if any one of complainants is entitled to have the funeral home enjoined as a nuisance, such relief should have been granted.

The residence of Murray C. White is the one in closest contact with and most immediately affected by the discomforts, annoyances, and the dangers, if any, growing out of such contact.

We need not, therefore, deal with the specific claim of each of complainants to relief.

This immediate district was first built up as a residence section, the Frank S. White residence dating back to 1887. In recent years it has been in a state of transition, becoming more and more devoted to commercial and other business purposes.

The north end of this block fronting on Twenty-Fourth street, the property of complainant Macke, is built up with retail stores, with offices and apartments on the second floors.

Apartment houses for residence purposes only located in strictly residence districts are due all the protection of other residence properties; but when directly over and in the same building with commercial enterprises, the incidents of a commercial district must needs affect their status.

Business enterprises are now located at both ends of the block fronting this funeral home, the corner lots on the west side of Twenty-Fourth street. Along Twelfth avenue east from Twenty-Fourth street business properties have accumulated, among other things, Brown's Funeral Home, on Twelfth avenue between Twenty-Fifth and Twenty-Sixth streets.

Without further detail, it suffices to say new construction is for business purposes, residences being removed to make way for same. A residence was removed to make a site for the Luquire Funeral Home here involved. Still many residences are here; a majority of the lots fronting on both sides of Twenty-Fourth street between Eleventh and Twelfth avenues are still occupied by residences, several of them owned by complainants to this bill. It may be truly said this funeral home is enlarging the business area in that block, pushing back the residence area, located in close proximity to residence property on three sides, separated by an alley on the south and east, and by Twenty-Fourth street on the west.

By the zoning ordinance of the city of Birmingham adopted in 1926, the city is divided into residence districts (four classes, A–1, A–2, B–1, and B–2), commercial districts, and industrial districts (two classes, light and heavy).

The site of the proposed funeral home is zoned in and as part of a commercial district. All the block where it is located is in the same district, except the southeast portion occupied by the Fraternal Hospital, which is zoned in a residence district. The block fronting on the west side of Twenty-Fourth street from this site is in the commercial district.

By the zoning ordinance buildings may be erected or used in a commercial district for any purpose except specified uses therein prohibited.

Exception No. 15 reads: "Undertaking, embalming or cremating parlor or plant, if so located that any part of such structure is within three hundred (300) feet of any lot which is in a Residence District as established by this ordinance and which abuts upon any part of any street which adjoins the lot upon which such structure is situated."

Like the city authorities, we construe this ordinance purports to authorize the erection of a funeral home in a commercial district, provided it is not within 300 feet of a residence lot located in a residence district as established by the ordinance, and which abuts on the same street with the funeral home. The intent seems to be to protect established residence districts from the location of such business near the boundary thereof and abutting on the same street within such distance as in the judgment of the zoning board will tend to defeat the purposes of a residence district. Authorization so construed, the location selected for this funeral home is one permitted by the zoning ordinance. A permit was accordingly issued to respondent W. H. Luquire, who was proceeding to erect garages for use in connection with the funeral home when the bill was filed.

We are confronted with this inquiry: Notwithstanding the zoning ordinance, the layout of districts pursuant thereto, and the issuance of a permit, is the funeral home a nuisance which should be enjoined in equity at the suit of these complainants or some of them?

It is a question of real difficulty, one to which we have given much consideration.

"A nuisance at law or a nuisance per se is defined to be 'an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings.' 29 Cyc. 1153." Wheeler v. River Falls Power Co., 215 Ala. 655, 659, 111 So. 907; First Ave. Coal & Lumber Co. v. Johnson, 171 Ala. 470, 474, 54 So. 598, 32 L. R. A. (N. S.) 522. This appears to be the accepted definition. 46 C. J. 648, § 5.

This definition is not always strictly adhered to even in our own decisions.

Thus in Higgins et al. v. Bloch et al., 213 Ala. 209, 104 So. 429, 431, it is said: "A business, lawful in its nature, and not a nuisance per se in one locality, may become or be a nuisance per se when erected and maintained in certain other localities. The particular location of the business and its management and the time of its erection may determine whether it is or not a nuisance per se. English v. P. E. L. & M. Co., 95 Ala. 267, 10 So. 134; Harris v. Randolph Lumber Co., 175 Ala. 148, 57 So. 453; Cemetery Co. v. McEvers, 168 Ala. 535, 53 So. 272."

Where "location" is a determining factor, the difference is rather one of terminology than of substance.

No lawful business can be deemed a nuisance per se under the definition first above quoted.

As frequently declared by this court, a funeral home is not a nuisance per se in that sense. It is a lawful business, one quite essential to meet modern needs in many ways.

But it must be regarded as settled in this jurisdiction that a funeral home located in a distinctly residence district may be and often becomes subject to be abated as a nuisance to those whose residences are in immediate proximity thereto.

In many early cases, and in the bill filed here, stress was laid on offensive odors, distracting sounds, danger from exposure to communicable diseases, etc.

The evidence in this record warrants a finding, in keeping with that of other courts in recent cases, to the effect that with modern equipment and management under up-to-date sanitary regulations, no offensive odors may reasonably be expected to reach residents upon nearby property. Annoyance therefrom and danger from disease are both negligible.

The siren of the ambulance on emergency calls, with possible outcries of grief-stricken friends, are sounds which may reach such residents.

More serious are the hurts that come through the sense of sight. The hearse, the ambulance, the morgue, are reminders of the presence of the dead; the funeral procession and service with all the incidents of grief-stricken relatives forced upon frequent attention of those entitled to the quiet, peace, and happiness of the home, bring depression and discomfort to the normal person unschooled to such conditions.

Such discomfort cannot be regarded as fanciful, imaginative, nor due to oversensitiveness. Conditions, inherent in the business, bring such an atmosphere about the place as to render it less desirable as a place of residence, and if less desirable the property becomes less valuable for residence purposes. Some cases have enlarged greatly upon these considerations. We merely add that this court has followed the line of cases declaring the funeral home, in the nature of it, may become and often does become a nuisance when located in close proximity to residences which are themselves located in a district devoted to residence purposes. Laughlin, Wood & Co. v. Cooney (Ala. Sup.) 126 So. 864;[1] Higgins v. Bloch, 213 Ala. 209, 104 So. 429; Higgins & Courtney v. Bloch, 216 Ala. 153, 112 So. 739; Bloch v. McCown, 219 Ala. 656, 123 So. 213; Gillette v. Tyson, 219 Ala. 511, 122 So. 830; Nevins v. McGavock, 214 Ala. 93, 106 So. 597; Blackburn v. Bishop (Tex. Civ. App.) 299 S. W. 264, 265; Tureman v. Ketterlin, 304 Mo. 221, 263 S. W. 202, 43 A. L. R. 1155; note 43 A. L. R. 1171; Saier v. Joy, 198 Mich. 295, 164 N. W. 507,

[1] 220 Ala. 556.

L. R. A. 1918A, 825; Jordan v. Nesmith, 132 Okl. 226, 269 P. 1096; Dillon v. Moran, 237 Mich. 130, 211 N. W. 67; Beisel v. Crosby, 104 Neb. 643, 178 N. W. 272; Densmore v. Evergreen Camp, 61 Wash. 230, 112 P. 255, 31 L. R. A. (N. S.) 608, Ann. Cas. 1912B, 1206; Cunningham v. Miller, 178 Wis. 22, 189 N. W. 531, 23 A. L. R. 739, and note; Street v. Marshall, 316 Mo. 698, 291 S. W. 494; King v. Guerra (Tex. Civ. App.) 1 S.W.(2d) 373; Bragg v. Ives, 149 Va. 482, 140 S. E. 656; Meldahl v. Holberg, 55 N. D. 523, 214 N. W. 802; Harris v. Sutton, 168 Ga. 565, 148 S. E. 403.

What is a residence district within this rule is not easy to define.

In our own case of Higgins & Courtney v. Bloch, 216 Ala. 153, 112 So. 739, as appears from the opinion of Mr. Justice Thomas, the long-established residence district was being invaded by business structures, was in course of transition from a residence to a business district. The court held, however, in effect that it was still essentially residential in character as alleged.

Similar cases and holdings appear in Tureman v. Ketterlin, supra, Dillon v. Moran, supra, King v. Guerra, supra.

This brings us to consider the effect of the zoning ordinance and the permit issued pursuant thereto upon the legal and equitable rights of these parties.

Code, § 1878, reads:

"*Business, industrial, or residential zones authorized.*—Each municipal corporation in the State of Alabama may divide the territory within its corporate limits into business, industrial, and residential zones or districts and may provide the kind, character and use of structures and improvements that may be erected or made within the several zones or districts established and may, from time to time, rearrange or alter the boundaries of such zones or districts and may also adopt such ordinances as necessary to carry into effect and make effective the provisions of this article." Laws 1923, p. 590, § 1.

See, also, Gen. Acts 1923, p. 581.

In First Avenue Coal & Lumber Co. v. Johnson, 171 Ala. 470, 54 So. 598, 599, 32 L. R. A. (N. S.) 522, dealing with the legislative power to define and prevent nuisances, this court said:

"The Legislature, therefore, cannot, by its mere ipse dixit, make that a nuisance which is not in fact or in truth a nuisance, or akin thereto. That which has none of the elements or characteristics of a nuisance, that has no capacity or tendency to injure the public health, the public morals, the public safety, or the public interest, cannot be made a nuisance by the Legislature, under the guise of a police regulation declaring it such. State v. Chicago Ry. Co., 68 Minn. 381, 71 N.

W. 400, 38 L. R. A. 672, 64 Am. St. Rep. 482; State v. Goodwill, 33 W. Va. 179, 10 S. E. 285, 6 L. R. A. 621, 25 Am. St. Rep. 863; Stehmeyer v. City Council, 53 S. C. 259, 31 S. E. 322; State v. Julow, 129 Mo. 163, 31 S. W. 781, 29 L. R. A. 257, 50 Am. St. Rep. 443. Neither can the Legislature make that not a nuisance which is per se such by merely saying that it is not or by attempting to legalize it, or to authorize the carrying on of the same, to the extent or to the end of exempting those persons so carrying it on from all liability for the consequences of that which is per se wrong and inimical to the public interests, or to the public good, the public morals, or the public health.

"The Legislature, in such cases, might exempt those who carry on such a business from liability to the state, but not from that to individuals whose property or health was destroyed or injured in consequence of such per se wrong."

Following the rules stated in an Illinois case, it was declared that in the case of those businesses or structures which in their nature are not nuisances, but may become so by reason of their locality or the manner in which conducted, "the power possessed is only to declare such of them to be nuisances as are in fact so." Laugel v. Bushnell, 197 Ill. 20, 63 N. E. 1086, 1088, 58 L. R. A. 266. But the legislative power is recognized as to "those which in their nature may be nuisances, but as to which there may be honest differences of opinion in impartial minds."

Manifestly this difference of opinion may relate to the locality in 'which such businesses, in view of all the conditions, should be permitted. The doctrine of the Johnson Case was followed in Gillette v. Tyson, 219 Ala. 511, 122 So. 830.

These announcements are in recognition of the general doctrine that the police power of the state in this respect "is limited and confined by the constitutional provision that the citizen shall not thereby unreasonably, arbitrarily, or without due process of law, be deprived of his life, liberty, or property." Johnson Case, supra.

■ It does not follow the Legislature is without power to confer upon municipalities in this state the authority to enact valid zoning ordinances as provided by Code, § 1878, supra.

Such power was recognized in Longshore v. City of Montgomery, 22 Ala. App. 620, 119 So. 599, certiorari denied without opinion in 218 Ala. 597, 119 So. 601.

The ordinance there involved was condemned because of the arbitrary discretion conferred on other property owners to grant or to deny to the owner of property the privilege of using it for stated purposes.

The law of zoning in cities, including the division of its territory into residence and business districts, is mainly the growth of the present century.

The authority therefor is found in the police power. The public health, safety, convenience, and general welfare all enter into the difficult and delicate problems confronting zoning boards in laying out such districts.

A broad and comprehensive scheme worked out upon full information by competent authority on the ground is the natural order. The courts, in recognition of the legitimate government functions committed to them, their superior opportunity to know and consider all the varied and conflicting interests involved, to balance the burdens and the benefits, to lay out zoning districts with a view to the general welfare of the city, are slow to set up their own opinions as against those charged with and in position to rightly perform such duty.

It is common knowledge that in our growing cities areas first occupied as residence property frequently undergo a transition and become commercial areas. Such changes are the normal result of growth.

Many concurring elements may cause the decline of a section for residence purposes; property values may be greatly influenced; undesirable conditions as a residence area may come about; all this without legal fault of any one, and without means of redress.

■ In fixing the boundaries of commercial and of residence districts, and the privileges accorded therein, the zoning authorities must needs consider the trend of development, the purposes for which values of properties are decreasing or increasing. Zones must be laid out with some regard to the future. Hardships would often result if structures were erected in one kind of district, and very soon the demands of change cause the property to be zoned in a different kind of district.

■ Not to needlessly prolong these reflections, we must hold that in an area undergoing a change from residential to commercial uses, some measure of discretion must be accorded the zoning authorities in fixing boundaries of such districts. If not clearly arbitrary and unreasonable, their action will not be disturbed. To use an expression often found in the authorities, if men may reasonably differ in view of all the circumstances, the action of the zoning authorities will be sustained.

These announcements are, we think, in consonance with sound principle, and with the great weight of authority.

The subject has been widely considered in all its relation to modern city needs, and to the individual rights of the citizen.

The following cases are illustrative and authoritative: Village of Euclid, Ohio v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Zahn et al. v. Board of Public Works of City of Los Angeles, 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074; Gorieb v. Fox et al., 274 U. S. 603, 47 S. Ct. 675, 71 L. Ed. 1228, 53 A. L. R. 1210; Opinion of the Justices, 234 Mass. 597, 607, 127 N. E. 525; Inspector of Buildings of Lowell v. Stoklosa, 250 Mass. 52, 145 N. E. 262; Spector v. Building Inspector of Milton, 250 Mass. 63, 145 N. E. 265; Brett v. Building Commissioner of Brookline, 250 Mass. 73, 145 N. E. 269; State v. City of New Orleans, 154 La. 271, 282, 97 So. 440, 33 A. L. R. 260; Lincoln Trust Co. v. Williams Bldg. Corp., 229 N. Y. 313, 128 N. E. 209; City of Aurora v. Burns, 319 Ill. 84, 93, 149 N. E. 784; Deynzer v. City of Evanston, 319 Ill. 226, 149 N. E. 790; State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012; State ex rel. Carter v. Harper, 182 Wis. 148, 157–161, 196 N. W. 451, 33 A. L. R. 269; Ware v. City of Wichita, 113 Kan. 153, 214 P. 99; Miller v. Board of Public Works, 195 Cal. 477, 486–495, 234 P. 381, 38 A. L. R. 1479; City of Providence v. Stephens, 47 R. I. 387, 133 A. 614; State ex rel. City Ice & Fuel Co. v. Stegner, 120 Ohio St. 418, 166 N. E. 226, 64 A. L. R. 916 and note 920 et seq.; 43 C. J. pp. 336, 337.

█ We cannot say the zoning of the site of this funeral home within a commercial district, with authority to conduct such business at points within such district, was arbitrary or unreasonable upon consideration of all the factors of the problem. Indeed, we cannot say we know all the considerations that may have properly influenced the zoning of this property.

We are not unmindful that the same discomfort comes to residents thus brought into near contact with a funeral home as if no zoning ordinance existed. Complainants are entitled to the protection accorded to all others in the enjoyment of the family residence, under like conditions. What we do hold is that all of us must bear such discomforts as come from changing conditions of city life, among them the lawful zoning of our properties with a view to the general welfare.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

## On Rehearing.

PER CURIAM.

The application for rehearing is overruled. All the Justices concur.